# CHARLESTON

LAY, ADMR. &c. *v.* ELK RIDGE COAL & COKE Co.

Submitted March 24, 1908.     Decided March 31, 1908.

1. MASTER AND SERVANT—*Actions for Injuries—Evidence—Admissibility—Repairs After Injury.*

  In an action for damages for injuries to a servant, caused by defective appliances or lack of safety in the place in which the servant worked, evidence of the making of repairs or alterations immediately after the occurrence of the injury is not admissible. (p. 292.)

2. SAME—*Safety Appliances—Right to Rely On.*

  A mechanism or appliance, apparently designed and intended to prevent injury to lives and persons of servants and property of

the master by reason of inefficiency of other appliances or negligence of servants, is nevertheless a part of the plant or machinery to which it is affixed or in connection with which it is used, and a servant may rely upon it for his protection. (p. 294.)

3. SAME—*Approximate Cause.*

If, by reason of a defect in such mechanism or appliance, unknown to a servant, it fails to prevent injury to him from an act of a fellow servant which it was designed and intended to render harmless, the defect, not the act of the fellow servant, is the proximate cause of the injury. (p. 294.)

4. SAME—*Concurrent Negligence of Master and Fellow Servant.*

A master is liable for an injury to a servant caused by the concurrent negligence of himself and another servant to whom the injured party sustained the relation of fellow-servant. (p. 295.)

5. SAME—*Duty of Master.*

The measure of the duty of a master to his servant is reasonable care, in view of the situation of the parties, the relations they have established, the nature of the business in which the servant is employed, the character of the machinery and appliances used, the surrounding circumstances and conditions and the exigencies which require vigilance and attention. (p. 295.)

6. TRIAL—*Instructions—Construction as a Whole.*

The use of general and indefinite terms in certain instructions, or in certain places in one instruction, is harmless, if the terms are properly defined and limited in other instructions, or in the same instruction at other places. (p. 296.)

Error to Circuit Court, McDowell County.

Action by W. F. Lay, administrator, for the death of his intestate, Rufus Toler, against the Elk Ridge Coal & Coke Company. Judgment for plaintiff and defendant brings error.

*Reversed. Remanded.*

RUCKER, ANDERSON, STROTHER & HUGHES, for plaintiff in error.

IRA J. PARTLOW and D. E. FRENCH, for defendant in error.

POFFENBARGER, PRESIDENT:

Rufus Toler an employee of the Elk Ridge Coal and Coke Company, was fatally injured at its tipple at the foot of

its incline by a loose car of coal, and W. F. Lay, his administrator, recovered a judgment against the company, in the circuit court of McDowell county, for the sum of $5,000.00, which has been brought here for review.

Plaintiff's decedent was engaged in dumping the loaded cars at the tipple, to which they were lowered from the drum house at the mouth of the mine on an incline, connecting the two points, by force of gravity, loaded cars, descending, drawing empty ones up, by means of a wire cable, passing over a drum at the tipple, and the speed being regulated by a lever in the hands of an operator. The cable was not attached to the cars, but to blocks against which the cars rested, called "Barneys," each track being double, having one set of rails for the "Barneys" and one for the cars. When a loaded car, coming from the mine, went on the proper track at the tipple, at the right time, there was a "Barney" in position to receive it, so that it could not get beyond control, if the drum was attended to. While that track was always closed or protected by the "Barney," the other one was open, its "Barney" being at the tipple, and a car, going on it, would run wild down the incline, but for a mechanism, called a "Dead Block," placed just below the intersection of the two tracks, coming up the hill, or the branching or fork of the single track, coming from the mine. By reason of negligence or oversight, cars did occasionally thus take the wrong track and were stopped by the "Dead Block." It was the business of the "Drum Runner" to operate the drum lever and also the switch lever, near it, by which the cars were guided on to the proper track. For some reason, whether habitual or anticipated negligence of the drum runner, or defectiveness of the switch, or extraordinary precaution against accident, the "Dead Block" was provided. A proved fact, is that some cars, gone wrong, had been stopped by it. This block was made of two boards, eight inches wide, three inches thick and three feet long, laid one on top of the other, and nailed or bolted together and placed between the tracks, on a three inch block. About the middle of it a bolt, an inch and a quarter in diameter and 18 inches long, went through it, the block on which it rested and a three inch

floor, so that six inches of it protruded below the floor, but it had neither a nut nor pin below the floor to hold it down. On this bolt as a fulcrum, the end nearest the switch swung automatically and rested over the track not ready to receive a car. It was thrown into this position by pressure from either the ascending or descending car on each trip. On the fatal occasion, giving origin to this action, the drum runner threw the switch the wrong way. The car struck the dead block with unusual force, it seems, and, it not being bolted down, the end of it rose high enough to let the wheels pass under. Frantic, but futile efforts were made by the men to stop it, and it went thundering down the incline, partially wrecking the tipple and killing Toler.

The court overruled a demurrer to the declaration and each of its four counts, and this is assigned as error. All of the counts set forth minutely the plan, arrangement and equipment of the plant, and aver the duty of the defendant "to use all due and proper care for the safety" of the decedent, and "to so provide, in operating its said line of railroad" that he "could, with safety and without unnecessary risk and danger to himself perform his duties," and then charge that the defendant "did not regard its duties as aforesaid and did not use due and proper care, foresight, prudence and caution." The first avers the further duty "by due and proper care, foresight, prudence and caution to provide a proper, suitable and safe place for said Rufus Toler to work" and charges that it did not do so, but "carelessly and negligently permitted and suffered the dead block * * * to be and remain, without the knowledge of the said Rufus Toler, out of order and repair and not properly fastened so that it was wholly insufficient and useless for the purpose for which it was intended; and by reason thereof" &c. The second avers the duty to provide a capable and competent person, as switchman, and charges failure and negligence in that respect, specifying the employment of an incompetent person. The third is similar to the second, charging the employment of a number of incompetent servants. The fourth is almost identical with the first. Both of these further charged knowledge of the defective

dead block in the following terms: "and the said dead block being, and for a long time prior thereto having been, insufficiently fastened and not in proper working order, all of which the said defendant knew." Each of them also charges that the car that killed Toler ran against the dead block and it gave way and let the car pass.

All the counts are clearly sufficient. It is argued that the first does not charge injury resulting from the defective dead block, because it avers there was no barney in position at the time to receive the car, and fails to show who placed, or permitted the car to go, on the track. Notwithstanding all this, it charges a defective block and its failure to stop the car as it should have done and was intended to do. Another criticism is supposed lack of an averment of failure to use due, reasonable and ordinary care. It does aver failure to use care, but may not state the exact degree of care required, though it says the defendant did not use due care nor exercise foresight, prudence and caution. We deem this amply sufficient, since the object of the declaration is to inform the defendant with reasonable certainty of the nature of the demand and ground of the action. If the terms used be construed to mean that no care at all, or slight care, was used, the averment is obviously sufficient. They cannot mean a high, or the highest conceivable, degree of care, for they do not import that.

At the trial, a blue print was admitted in evidence, by agreement of the parties, showing the construction and mode of operation of a new and better dead block put in after the accident, for the purposes of illustration, concerning which questions were propounded and answered. It was a better block and on the bolt below the floor there was a nut to prevent it from bouncing or being pushed up. Over the objection of the defendant, a witness was required to state when the new block was put in and point out the differences between it and the old one, and the change was thus shown to have been made about a week after the accident. On a subsequent motion to strike out this evidence, the court "sustained the motion of the defendant to strike out so much of the evidence of the witness as relates to the condition of the dead block at the present time, but overruled

the motion of the defendant in so far as it relates to what changes were made in the dead block about a week after the accident." The map, exhibited to the jury, showed the nut on the bolt as well as other things the old block did not have. Except as to the matter of the time at which the change was made, the oral testimony concerning it, while indicating a work of reparation, showed the condition of the block at the time of the accident. But for it, the map, indicating perfection of the block, would have misled the jury to the prejudice of the plaintiff. The vice of this evidence, if any, is found in the statement of the time at which the change was made. The court seems to have sustained the motion as to the plainly admissible part of the evidence and overruled it as to the questionable part. The use of the drawing for purposes of illustration did not necessitate, call for or justify, proof that the block from which it was made was in use at the place of the accident or that any change had been made by way of repairs or better precaution against danger, nor was the condition of the place at the time of trial material. It would have been easy to say the drawing did not represent the block in use when the injury occurred and point out the differences and stop there. Evidence of subsequent repairs and precautions is inadmissible. *Columbia &c. Ry. Co.* v. *Hawthorne,* 144 U. S. 202. The rule is recognized as the prevailing doctrine in this country. See 21 Am. & Eng. Law 521, citing cases from twenty-three American states, as well as an English decision. An effort is made to bring this evidence within the qualification, allowing evidence of subsequent changes, when they fairly tend to show the actual condition existing at the time of the injury; but the evidence in question here went to the extreme of showing the change was made almost immediately after the injury. The time of the change did not tend in any dgree to prove the condition at the time of the injury. That part of the evidence was entirely outside of the qualification, and we think the error of the court in admitting it is perfectly obvious. It was no doubt permissible under the qualification to show the condition of the place at the time of the trial in order to enable the jury the better to understand the evidence relating to its condition, when the injury occurred.

A motion to exclude plaintiff's evidence was based on, first, lack of proof that the decedent was at his place of work, when injured; second, proof of reasonable care and precaution to make the dead block safe; third, remoteness of the defective dead block as a cause of the injury; and fourth, proof of injury by the negligence of a fellow servant.

Toler was found on the ground about ninety feet below the point at which he had worked in the tipple building, and no witness testifies as to where he was when struck. The presumption in favor of performance of duty and right action, aided by the circumstances, affords ample foundation for the inference that he was at his post of duty.

The dead block was not safe in point of fact, as one of the workmen discovered and informed the mine foreman a short time before the death of Toler. It was not only insecurely attached to the floor but failed to turn fully across the track as it should have done. Between that time and the happening of the injury some change was made, the nature and extent of which is not shown, but it was not remedied in these respects. That the servants in allowing the cars to go against it, saw the necessity of running or allowing them to go to it very slowly and carefully, tended to prove its unsafeness. There is no proof of long and safe use of this dead block or one similarly constructed and attached, so as to bring the case within the rule stated in *Schwartz* v. *Skull*, 45 W. Va. 405, *Riverside &c. Mills* v. *Green*, 98 Va. 58, *N. & W. Ry. Co.* v. *Phillips*, 100 Va. 362, and other authorities cited in the brief. Just at this point, it is suggested that the master is not bound to provide absolute safety, nor the best and safest machinery and appliances. No, but he must exercise reasonable care and we think the state of the evidence such as to raise an inquiry in this connection proper for jury determination.

The third and fourth grounds of the motion to exclude may be disposed of together. The dead block formed a part of the plant. It was designed and intended to perform a function in the operation of the mine and constituted a safe-guard for both life and property. It may have been provided to compensate for inefficiency of the track or

switch or to save the expense of an additional man to operate the switch. Whatever the motive, it was adopted and used as a part of the machinery and relied upon by the servants at the tipple for protection. The servant, on entering into the service of the company, is presumed to have observed this and relied upon it. *Fulton* v. *Crosby & Beckley Co.*, 57 W. Va. 91. Though the machinery and appliances provided by the master are crude, imperfect and temporary in character, the employer is bound to exercise reasonable care in view of the situation of the parties, the nature of the business, the character of the machinery used, and all the surrounding circumstances and conditions. In the case just cited, the plaintiff had been injured on a logging railroad and we made the following enunciation and applications of legal principles: "A lumber railroad, crudely and unscientifically constructed, the character of which is fully known to a servant who is engaged in operating a locomotive upon it, has, in the contemplation of the parties, and, therefore, of the law, certain elements and qualities upon which the servant may rely for his personal safety, and which the master, by the exercise of reasonable care, must maintain." Had there been evidence tending to prove knowledge on the part of Toler of the defective character of the dead block, his assumption of the risk of its safety would have gone to the jury along with the balance. The rule operates both ways. In this view of the matter, it becomes manifest that defectiveness of the dead block was the proximate cause; but, if it were not, the defendant could not be relieved because it was a contributing cause, uniting with the negligence of the switchman. The master is liable when injury is caused by the concurrent negligence of himself and a fellow servant. 26 Cyc. 1302, citing cases from nearly all the states.

The criticism of the instructions given for the plaintiff is, in substance, that they told the jury it was the duty of the defendant to furnish Toler a safe place in which to work and safe appliances, and precluded inquiry as to whether the negligence of a fellow servant was the proximate cause of the injury. Though "safe place" and "safety" are, in some instances used, the measure or degree of care required

is prescribed in other places, and danger of the jury being mislead by reason of the generality or indefiniteness of these terms thereby guarded against. As to the other basis of criticism what has been said here concerning the overruling of the motion to exclude the evidence fully suffices. It also disposes of the assignments of error based on the action of the court in refusing defendant's proposed instructions No 1, telling the jury to find for the defendant; No. 2, telling them the negligence of the drum runner was the proximate cause of the injury; and No. 6, telling them the mine boss was a fellow servant and to find for the defendant, if they believed from the evidence the injury resulted proximately from his negligence.

The court refused to instruct that the knowledge of the mine boss, respecting the conditions of the dead block, was not equivalent to notice to the company. As to the duty of provision and maintenance of a safe place to work, not operation of the works, the mine boss was a vice-principal, charged with the duty of inspection and report. Though he may have no authority to make changes or repairs, he did have supervision and general oversight of the work and premises, and notice to him was, in law, notice to the master. 26 Cyc 1147, citing numerous cases from many of the states. The instruction was, therefore, properly refused.

For the error noted, respecting the admission of evidence, the judgment will be reversed, the verdict, set aside, and the case remanded for a new trial.

*Reversed.    Remanded.*

BRANNON, JUDGE:

I cannot agree to reverse, and for the reason that I think the evidence for which the reversal is made did not produce or conduce to the verdict, and that the verdict should and would have been the same without it. If that bolt in the block was defective, and caused the accident (Who can dispute this?) is it possible that evidence that the company caused a better one to be made later could have caused the jury any more to think that the bolt was bad on the day of the misfortune, or changed the jury's opinion as to its conditions on that day? I think there are too many reversale on light and technical grounds. Where improper evidence has been ad-

mitted, yet it is clear that it did not conduce to the verdict, and that the same verdict should have been and, in all fair probability, would, have been given, and that there has been a fair trial on the whole case on its merits, the verdict should stand. Authorities are numerous. *Flowers* v. *Fletcher*, 40 W. Va. 104; *State* v. *Yates*, 21 *Id.* 761; *Poindexter* v. *Davis*, 6 Grat. 493; note to 9 Grat. Anno. 69. You may say that it is a rule as to any error, that it will not reverse, if it is clear that the judgment is right. *Bank* v. *Huntington*, 41 W. Va. 481; *Kincheloe* v. *Tracewell*, 11 Grat. Anno. 587 and notes.

I hesitate as to the liability; but treating the ground of liability, that is whether the block was such a defect as entailed liability, as a question of fact for the jury, conceding that, I would not set aside the verdict for the admission of improper evidence.

Judge McWhorter concurs in this note.