# CHARLESTON.

STATE FOR USE PARKERSBURG CORRUGATED PAPER CO. v. U. S.
FIDELITY & GUARANTY COMPANY.

Submitted February 6, 1918.   Decided February 26, 1918.

1.  ATTACHMENT—*Wrongful Attachment—Damages.*

Inability of a manufacturing company or firm on whose plant
an attachment has been wrongfully levied, to operate the plant and
carry on its business, with profit, does not preclude right in it to
recover damages by way of compensation for deprivation of the
value of the use of such property, during the period of the wrong-
ful seizure and possession.  (p. 752).

2.  SAME.

In such case, there may be a recovery also for deterioration of
the plant and injury to materials and finished products, occasioned
by the wrongful seizure.  (p. 752).

3.  SAME—*Wrongful Attachment—Damages—Wages and Salaries.*

If, in the opinion of the jury, founded upon sufficient evidence,
the company had reasonable ground for belief that it would be
able to resume operations, profitable or unprofitable, and intention
to do so, there may be a recovery, in such case, for the wages or
salaries of retained agents and employees whose services were
deemed to be essential to efficient conduct of the business. (p. 752).

4.  SAME—*Wrongful Attachment—Damages—Instruction.*

Though compensation for deprivation of profits, if recoverable
in such case, would include compensation for deprivation of the
use of the plant, and the latter could not be recovered in addition
to profits, it is not erroneous to give separate instructions, in a
case in which the evidence may not justify a verdict for profits,
authorizing consideration of both profits and use of the property,
in the ascertainment of the damages, and omitting reference to
the relation between the two items, since they correctly state the

law as far as they go and lack nothing but completeness. The mere possibility of a misleading inference deducible from their terms and provisions does not vitiate them. (p. 755).

5.  SAME—*Action on Bond—Recovery—Items.*

    Recovery of a smaller sum than is claimed, in one of two actions on attachment bonds, in which the items of the bills of particulars filed are identical, does not preclude right of recovery in the other. (p. 756).

6.  SAME—*Joint Wrongdoers—Recovery.* ·

    In the case of several wrongful and successive seizures of the same property, under attachments, covering in part the same period of time, the wrongful acts are concurrent, not joint, and the injured party may recover from any one of the wrongdoers the entire damages accruing within the period of his seizure and unlawful possession of the property; but he can have only one satisfaction for the same injury and, after having recovered a judgment against one of the parties, he must allow, in a second one against another, credit for the amount of the former recovery, in the estimation of his damages. (p. 756).·

7.  PLEADING—*Bill of Particulars—Sufficiency—Evidence.*

    A clause in a bill of particulars specifying two grounds of damages and claiming a stated amount on account thereof, without specification of the part or sum claimed on each ground, is sufficient, in the absence of a demand for separation, and justifies admission of proof of damages on both of such grounds. (p. 754).

8.  APPEAL AND ERROR—*Objection or Exception—Sufficiency.*

    To be available as ground of error in the appellate court, for refusal of the trial court to grant it, a demand for greater detail and specification in a bill of particulars, must be certain and definite. (p. 756).

Error to Circuit Court, Wood County.

Proceeding by State, for use of Parkersburg Corrugated Paper Company, against the United States Fidelity & Guaranty Company. Judgment for plaintiff, and defendant brings error.                                                        *Affirmed.*

*Merrick & Smith,* for plaintiff in error.
*McCluer & McCluer,* for defendant in error.

POFFENBARGER, PRESIDENT:

The judgment here complained of was recovered on an attachment bond given in a case in which the attachment was

quashed on a plea in abatement, putting in issue the truth of the matters set forth in the affidavit, as grounds of attachment.

The writ was levied on the machinery and materials in a small manufacturing plant in Parkersburg, a paper box and container factory, that was idle at the time. For some time prior to the year 1914, S. W. Goff had owned, and his son F. C. Goff, had managed, the plant and it was enlarged in the fall of 1913. In the spring of 1914, a corporation known as the Parkersburg Corrugated Paper Company was organized and it took over the machinery and business, in consideration of $19,500.00 of its capital stock and $450.00 in cash. The corporation began business March 10, 1914, but partially, if not wholly, shut down, July 23, 1914. The C. L. La Boiteaux Company had caused an attachment to be levied on the plant October 15, 1914, for a claim amounting to about $350.00, and the United Paper Board Company, the principal in the bond sued on, caused a second one to be levied on it, October 17, 1914, for a claim amounting to nearly $1,000.00.

Both attachments were quashed and actions were brought on both of the bonds. In each case, the declaration claimed the penalty of the bond, $700.00 in the first and $2,000.00 in the second, and the full amount of the penalty was recovered in each case. The bills of particulars filed in the two cases were exactly alike and each claimed $3,800.00 for deprivation of profits and use of the property; $1,000.00 for deterioration; $200.00 for deprivation of the use of the rented building in which the plant was installed; $4,000.00 for prevention of a sale of the property; $250.00 for costs of dissolution of the attachment; and $1,266.00 for wages of employees retained in the hope of resumption; total $10,516.00.

While numerous errors are assigned, the general ground of complaint seems to be assumed or suspected excessiveness of the damages awarded. One ground of attack is alleged impossibility of any losses by deprivation of profits, use, or deterioration of the property, because, it is said, the facts and circumstances disclosed by the evidence prove the business was unprofitable, the plant idle at the time of the seizure and the corpoartion insolvent and unable to obtain funds neces-

sary to prosecution of its business. Lack of such funds at that time is admitted, but evidence was adduced, tending to prove a good profit in the operation of the plant and probability of procurement of financial help sufficient to enable the company to resume full operation. The machinery had originally cost $10,030.00 and, at the date of the transfer to the corpoartion, the accounts, stock and cash amounted to $5,-000.00 or $6,000.00, while the debts were at least $10,000.00. From that date until the plant shut down, there was no considerable increase of assets, but the indebtedness swelled to $27,000.00 or $28,000.00. On a certain day in 1914, the company's balance in a bank in which it kept an account was only $10.74 and, on another, only $340.22. Generally, however, the bank balance was in the neighborhood of $1,000.00. The company had orders for a large amount of work, which had been obtained in an effort to make its trade commensurate with the capacity of the plant. About $5,700.00 of the indebtedness was really due to S. W. Goff, and it is said he had endorsed all of the company's paper, but this claim rests on no evidence found in the record. It is claimed one of the purposes of the cessation of operations was delay for maturity and collection of bills amounting to about $5,000.00, which would have provided some working capital, and another effectuation of arrangements for additional money. The Goffs say their efforts in this behalf would have been successful, but for the levy of the attachment of the United Paperboard Company, notwithstanding another one had been levied two days previously at the instance of the C. L. La Boiteaux Company. S. W. Goff says the first levy would not have defeated his purpose, because, on discovery thereof, he had arranged for money with which to pay off the claim and the arrangement would have been consummated, but for the levy of the second one. ,

The merits of the respective contentions as to the idleness of the plant, its causes and the possibility of profits need not be determined. Under the circumstances disclosed, the damages predicated on deprivation of profits may not be recoverable, but there is proof of other damages to the extent of the amount of the judgment. Injury to the machinery and stock

of supplies wrought damages recoverable on the bond, whether
the concern was a going one or not. *Lowenstein* v. *Monroe,*
55 Ia. 82; *Pettit et als.* v. *Mercer,* 8 B. Mon. (Ky.) 51. A
witness positively swears the following losses were occasioned
by deprivation of the possession, care and control of the pro-
perty, by the wrongful levies: Strawboard worth about $500.-
00 was rendered practically valueless. Gum Tape of the val-
ue of $300.00 was injured to the extent of one-half of its
value. Finished goods worth $700.00 were greatly injured.
The machinery worth $10,030.00 was depreciated to the ex-
tent of $4,000.00 or $5,000.00. All of these things had a
market value susceptible of injury, whether the company was
able to continue or resume active and full operation or not.
Some of the estimated losses were no doubt high, but they
can be discounted fifty per cent., without cutting the aggre-
gate below the amount of the verdict. By allowances for the
salaries of retained employees and costs of dissolution of the
attachment, a still greater reduction of damages to machinery
and materials can be made without disturbance of the verdict.
Notwithstanding the substantial cessation of operation of the
factory and the probability of non-resumption, the company
had clear legal right to fight for its existence. Likely it could
not legally enhance the damages by clearly useless retention
of employees, but it manifestly had legal right to retain such
of them as would have been indispensable, in the event of the
success of its efforts to resume, if the managers had reason-
able ground to believe resumption of business was possible.
They swear they had at the time of the wrongful levies.
While the levies were in force, nothing could be done, and
the possibilities of the situation after dissolution of the at-
tachments could not have been certainly known until the
event happened. Nor could anybody foresee, with certainty,
the duration of the seizure. The Goffs say they were diligent
and earnest in their efforts to get the property released. That
they did not succeed until late in December, 1914, does not
prove previous knowledge of the period of wrongful custody.
Upon the evidence adduced, the existence of reasonable
ground for belief in the ability of the company to resume
business in full force, justifying retention of indispensable

agents and employees, was a question for the jury. Even though realization of profits may not have been possible within the period of the seizure, there was manifest right to run the plant and endeavor to improve its condition financially and otherwise, in the hope and expectation of better conditions in the future. The maintenance of an office and agent at Pittsburgh, while the attachments were in force, cost the company about $800.00. The salaries of the foreman, stenographer and manager amounted to more than $500.00. Another item to be added is the market value of the use of the plant, not its value to the owner. *Hurd* v. *Barnhart,* 53 Cal. 97; *Pettit et als.* v. *Mercer,* 8 B. Mon. 51; *Lowenstein* v. *Monroe,* 55 Ia. 82. Witnesses place this item at about $1,-200.00 per month, and there is no conflict in the evidence as to it or any of the other claims. Only its sufficiency is questioned, in view of facts and circumstances already adverted to, and they are inconsistent only with the claims for deterioration and loss of profits, both of which may be eliminated without reduction of the damages below $3,000.00. The claim for costs of dissolution is resisted on the ground of uncertainty as to the amount, but, in view of the right of the jury to assess the damages at a figure in excess of the aggregate of the verdicts in the two actions, it is unnecessary to inquire as to the validity of this claim.

The objection interposed to the proof of the value of the use of the property on the ground of lack of specification thereof in the bill of particulars, was properly overruled. The first item of the bill specifies deprivation of use and deprivation of profits, without distinction between them or apportionment of the total amount claimed, $3,800.00, but there was no objection to it on that ground. In other words, there was no demand for an apportionment or division of the amount claimed. There was a demand for specification of the period of deprivation of use and one for the amount of profits claimed, but these were not tantamount to a request for separation. To be available here, such a demand must be clear and specific, else rank injustice might be inflicted upon the trial court. An ambiguous or uncertain demand or request

might be given one aspect in that court and another and different one here.

The objection to plaintiff's instruction No. 2 was properly overruled. Though the evidence tending to prove ability of the company to resume operations was slight and might not sustain a verdict for loss of profits, it was sufficient to justify the giving of an instruction based upon the theory of right to profits. *State* v. *Clifford,* 59 W. Va. 1, 19, 23. This prin-ciple also justifies the giving of plaintiff's instruction No. 3. The evidence clearly tended to prove some expense incurred in procurement of dissolution of the attachment. Plaintiff's instruction No. 4, propounding the theory of right to recover for the use of the building in which the plant was located had a solid foundation in the evidence. Lack of capacity to operate the plant did not preclude right of recovery for the use of the property. The building was not seized, but the seizure deprived the plaintiff of its use. There is a proper time limitation in plaintiff's instruction No. 6, and right of recovery for deterioration has already been asserted. At the instance of the defendant, the jury were told they must not allow for deterioration before the levy. The instruction was properly given. Of course both profits and compensation for deprivation of the use of the property could not be recovered, in so far as the profits included the value of the use, but the latter was recoverable in any event, either as part of the profits, if any, or as compensation for use, if none, wherefore there was reason for the distinction between them, marked but not specified in plaintiff's instructions Nos. 2 and 7. In other words, there was a claim for the value of the use, which was recoverable whether the claim for profits was valid or not, and another claim for profits which the jury could consider. Allowance of the latter would necessitate re-jection of the former, because it was inclusive. But, in neither of the two instructions, did the court give any specific instruction as to the mode of computation. The jury were merely advised that they should consider both claims in ar-riving at their verdict. If the defendant doubted their abil-ity to perceive this obvious distinction, without judicial aid, it should have requested the court to bring it to their atten-

tion by an instruction. Neither instruction was binding and neither expressly dealt with the relation here noted. To the extent of the terms used, each correctly stated the law. Considered separately or together, they were incomplete and it was possible to draw an incorrect inference from them. This, however, does not make the giving thereof ground for reversal. *State* v. *Kellison,* 56 W. Va. 690; *Bank of Greenville* v. *Lowry & Co.* and *State* v. *Snider,* both decided at the present term. The inclusive character of the profits may have been fully explained and agreed upon in the oral argument and thoroughly understood by the jury. At any rate, the defendant had an opportunity to have these two instructions completed and made certain and definite as to the relation between profits of the business and use of the property, and neglected to avail itself of it. What has been said on the subject of the right of the company to retain employees constitutes a sufficient reply to the criticism of plaintiff's instruction No. 9.

The previous recovery on the bond given in the action by the C. L. La Boiteaux Company was relied upon in an objection to the giving of plaintiff's instruction No. 8 and exceptions to the refusal of instructions Nos. 8 and 9, requested by the defendant, as well as upon the motion to set aside the verdict. The former recovery is not relied upon as an adjudication in favor of the defendant, but inconsistency in the assertion of the same demands against each of the two attaching creditors is strongly urged, in connection with the contentions that neither levy caused the plant to shut down and that the second could have done no harm, because the property was already in custody. Idleness of the plant at the time of the levy, however caused, neither precluded right of recovery nor instructions as to the elements and measure of damages. Profit alleged to have been lost was not the only item claimed. The inconsistency of claims and the legal effect of a former attachment and recovery of damages on account thereof do not prevent recovery on the second bond. *Fechheimer* v. *Bank,* 31 Gratt. 651. If defendant's instruction No. 8 had been given, it would have told the jury they could allow the plaintiff no more than the costs and expenses

of dissolution of the attachment, if the other items of bills of particulars in the two actions were identical. Release of the property from the first attachment might have been possible, if the second had not been levied. Goff swears it would. This possibility alone demonstrates the fallacy of the proposition embodied in the instruction. Defendant's instruction No. 9, if given, would have told the jury they could allow only the cost and expenses of procuring dissolution of the attachment, if they believed several attachments had been levied and they were unable to separate the damages. As the attachment here involved was the second and the preceding one might have been relieved from, but for it, the direction asked for was clearly wrong, as regards these two. Of course there was no joint liability, *Fechheimer* v. *Bank,* cited, *Blaidsdell* v. *Stephens,* 14 Nev. 17, and *Miller* v. *Highland Ditch Co.,* 87 Cal. 430, but the wrong-doer cannot make the wrongful acts of others, concurrently done, an avenue of escape from liability. For the impossibility of the apportionment of the damages, the plaintiff was not responsible in any particular. The wrongful act of the defendant's principal ran through the entire transaction and at least partially produced every element of the entire injury. Its conduct was not a partial contribution to an entire result that could not have occurred without such contribution, but one of several acts each of which would have produced the entire result. Its own wrongful levy would have occasioned the whole injury complained of. In such cases, the injured party may claim entire compensation from any one of several tort-feasors. This is the settled rule in cases of concurrent negligence, *Lay* v. *Elkridge Coal Co.,* 64 W. Va. 288, and no distinction between them and this case is either logical or practicable.

Perceiving no error in the judgment, we will affirm it.

*Affirmed.*