346 S.E.2d 812

**Emmanuel GRILLIS, et al.**

**v.**

**MONONGAHELA POWER CO.**

**No. 16758.**

Supreme Court of Appeals
of West Virginia.

July 11, 1986.

John B. Garden, Paul T. Tucker, Helen Campbell Atlmeyer, Bachmann, Hess, Bachmann & Garden, Wheeling, for appellants.

William Druckmann, E. Dixon Ericson, Preiser & Wilson, Charleston, for appellee.

MILLER, Chief Justice:

The defendant, Monongahela Power Company, appeals a final judgment of the Circuit Court of Brooke County, wherein the plaintiffs, Emmanuel Grillis and Maria Grillis, his wife, were awarded a jury verdict in the amount of $500,000 as damages for personal injuries. A judgment order in the amount of $465,000 was entered, representing the amount of the verdict less a setoff of $35,000 from a pretrial settlement with another defendant.

Error is alleged with regard to the trial court's handling of the pretrial settlement on the basis it did not disclose the settlement to the jury. Errors are also assigned on the court's failure to direct a verdict for the power company and in the giving of one of the plaintiffs' liability instructions. A final claim is made with regard to the trial court's refusal to admit evidence concerning the post-accident procedures of the power company in de-energizing the power line.

The plaintiffs instituted suit against Norfolk and Western Railway Company, a

predecessor of Norfolk and Western, and the defendant, Monongahela Power Company. Norfolk and Western filed a third-party action against Emmanuel Grillis's employer, Master Painting and Sheeting Company. About one week prior to trial, the plaintiffs reached a settlement of their claim against Norfolk and Western Railway Company. The amount of this settlement, $35,000, was used as an offset against the final verdict, and both the railroad and the painting company were dismissed from the suit.

The basic facts surrounding the accident are that on July 17, 1975, the plaintiff, Emmanuel Grillis, was painting a section of steel girder on a railroad bridge spanning the Ohio River. He was employed by an independent painting contractor, Master Painting and Sheeting Company, which had contracted with the railroad company to paint its bridge. As the plaintiff began his descent from the top of the bridge, a loop of his paint hose came into contact with the power company's 25,000 volt transmission lines which crossed about eight feet under the bridge. As the hose touched one of the lines, there was a flash and an explosion, and a charge of electricity spread up the paint hose and through the metal spray gun. It jolted the plaintiff and caused him to fall a distance of about thirty-five feet into the transmission lines and from there, he fell another thirty-five feet to the ground. He suffered severe injuries which the medical evidence indicated rendered him permanently and totally disabled.

The plaintiff's evidence as to the negligence of the power company involved expert testimony as to how the defendant could have made its lines safe to prevent similar kinds of accidents. This included temporary and permanent insulation, proper de-energization procedures, visual warning procedures, and short-circuiting procedures. The plaintiffs' expert stated that the paint hose, through repeated use, had become covered with a sufficient amount of paint so as to act as a conductor of electricity.

## I.

The defendant's first error centers on the trial court's failure to disclose the settlement facts to the jury at the beginning of the trial. The claim is made that the jury was confused over the absent parties. It is acknowledged that under Syllabus Point 2 of *Groves v. Compton*, 167 W.Va. 873, 280 S.E.2d 708 (1981), in the absence of a written stipulation, the manner of disclosing the amount of any pretrial settlement and the dismissal of a party from a lawsuit is left to the discretion of the trial court:

> "In the absence of a written stipulation by the parties, the better rule is to leave the question of the manner of handling the offset occasioned by the settlement by a joint tortfeasor, as well as the manner of informing the jury that such party has been dismissed from lawsuits, to the sound discretion of the trial court."

The power company argues that this syllabus point implies a duty on the part of a trial court to in some manner inform the jury that a party to the litigation has been dismissed.

Subsequent to *Groves*, we decided *State ex rel. Vapor Corp. v. Narick*, 173 W.Va. 770, 320 S.E.2d 345 (1984), where we discussed what is termed a "Mary Carter" settlement agreement by which one or more defendants secretly settle with the plaintiff and agree to remain in the case. Ordinarily, one of the terms is that a settling defendant will have its settlement figure reduced if the plaintiff is awarded damages against nonsettling defendants in excess of a stated figure. We recognized that such agreements cause the settling defendant to secretly align himself with the plaintiff as against the nonsettling defendants and in note 10 of *Vapor*, 173 W.Va. at 776, 320 S.E.2d at 351, we made this observation: "In the Mary Carter area, it is commonly held that the jury should be informed of the general nature of the compromise agreement so that they will know how the parties' loyalties may be affected by it." (Citations omitted).

There is no contention in this case that this was a "Mary Carter" type settlement and indeed there could not be such conten-

tion since the settling parties were dismissed out of the case prior to trial. Nor are we shown any particular harm that has befallen the power company from the pretrial settlement of the other parties other than what generally accrues when a joint tortfeasor finds that he is the only remaining party in the case.

We do not believe the language in *Groves* regarding the manner of informing the jury as to the dismissal of a party from a lawsuit can be construed to mean that there is a mandatory duty. The facts in *Groves* illuminate the reason for this language. There had been a pretrial dismissal of one of two defendants as a result of a settlement. There had been an agreement that the amount of the settlement would not be disclosed to the jury, but would be deducted from its verdict. In the course of his closing argument, defense counsel advised the jury that the reason the absent defendant was not in the case was that he was a friend of the plaintiff.

■■■■ The plaintiff's counsel sought to correct this misstatement by advising the jury that the reason the defendant was not in the case was that he had settled with the plaintiff. The trial court refused to permit the plaintiff to make this statement and we held this was error since the plaintiff's case was prejudiced by the misstatement and concluded in *Groves*, 167 W.Va. at 880, 280 S.E.2d at 712:

"In regard to informing the jury as to the dismissal of the party who has settled, we do not believe that any fixed rule can be set except to state that neither counsel should be permitted to take unfair advantage of the settlement and dismissal in presenting and arguing their case."

In the absence of a particularized showing on the part of the remaining parties to a suit that one or more of them will suffer

prejudice if the trial court fails to advise the jury of the dismissal of one or more parties to the suit, or that another party has taken an unfair advantage of the dismissal in its presentation and argument of the case, there is no duty on the trial court to so instruct the jury regarding the dismissal of a party from the suit. No such particularized showing was made in this case. Consequently, we believe that the trial court's failure to advise the jury that a defendant and its third party defendant had been dismissed from this case because of a pretrial settlement is not error.

## II.

The power company claims the trial court erred in giving plaintiff's instruction number 17, which stated a basic liability theory.[1] The law embodied in this instruction substantially conforms with Syllabus Point 3 of *Lancaster v. Potomac Edison Co.*, 156 W.Va. 218, 192 S.E.2d 234 (1972), and, therefore, we find no error:

"A company maintaining an electric line, over which a current of high and dangerous voltage passes, in a place to which it knows or should anticipate others lawfully may resort for any reason, such as business, pleasure, or curiosity, and in such manner as exposes them to danger of contact with it by accident or inadvertence, is bound to take precaution for their safety by insulation of the wire or other adequate means."

*See also* Syllabus Point 6, *Sutton v. Monongahela Power Co.*, 151 W.Va. 961, 158 S.E.2d 98 (1967); Syllabus Point 2, *Love v. Virginia Power Co.*, 86 W.Va. 393, 103 S.E. 352 (1920).

The power company's argument that it should have had a directed verdict is principally based upon *Musser v. Norfolk and Western Railway Co.*, 122 W.Va. 365, 9 S.E.2d 524 (1940), where a divided court concluded that the railroad which operated

---

1. The plaintiff's instruction stated:
"Emmanuel Grillis had a right to be on any part of the railroad bridge in necessary work in painting it, and the defendant, Monongahela Power Company, maintaining an electric line, over which a current of a high and dangerous voltage passes, in a place to which it knows or should anticipate others lawfully may resort for any reason, such as business, pleasure, or curiosity, and in such manner as exposes them to danger of contact with it by accident or inadvertence, is bound to take precautions for their safety by insulation of the wire or other adequate means."

an electrified railway could not reasonably foresee that someone would dangle an eight-foot chain onto its electrical wire. The exposed wire passed under a bridge that the infant plaintiff walked across dangling a chain.

■ We do not believe that it can be said that *Musser* controls. The *Lancaster* case contains an excellent summary of the law in this area and points to the conclusion that where an injured plaintiff is performing a customary service on a structure and contacts an uninsulated high voltage wire, the issues of negligence and proximate cause are jury questions. This is consistent with our traditional rule stated in Syllabus Point 6 of *McAllister v. Weirton Hospital Co.*, 173 W.Va. 75, 312 S.E.2d 738 (1983):

> " 'Questions of negligence, due care, proximate cause and concurrent negligence present issues of fact for jury determination when the evidence pertaining to such issues is conflicting or where the facts, even though undisputed, are such that reasonable men may draw different conclusions from them.' Syl. pt. 1, *Ratlief v. Yokum*, 167 W.Va. 779, 280 S.E.2d 584 (1981), *quoting*, syl. pt. 5, *Hatten v. Mason Realty Co.* 148 W.Va. 380, 135 S.E.2d 236 (1964)."

In this case, there was evidence that the power company had actual knowledge in advance of the day of the accident that the railroad bridge was to be painted. One of Mr. Grillis's foremen had contacted the power company about de-energizing the line that ran under the bridge, but was told that this could not be done. There is some dispute on this since it does appear that the line was de-energized at the request of Mr. Grillis's employer for one day about a month prior to the accident. Such dispute in the facts called for jury resolution. Furthermore, there was other evidence of negligence shown by the plaintiffs as against the power company. Consequently, we conclude that the trial court was correct in refusing to direct a verdict for the power company.

### III.

The defendant's final error is that the trial court rejected testimony about the de-energization of the power line after the accident. The defendant argues that this is not like evidence of subsequent repairs which is ordinarily inadmissible. *Jankey v. Hope Natural Gas Co.*, 91 W.Va. 308, 112 S.E. 642 (1922); *Hairston v. United States Coal & Coke Co.*, 66 W.Va. 324, 66 S.E. 473 (1909); *Lay v. Elk Ridge Coal & Coke Co.*, 64 W.Va. 288, 61 S.E. 156 (1908); F. Cleckley, Handbook on Evidence for West Virginia Lawyers 368 (2d ed. 1986). Rather, the defendant's point is that the plaintiffs brought in some evidence suggesting that it was difficult, if not impossible, to obtain de-energization of the power line. Consequently, the defendant wished to counter this by evidence that on three occasions after the accident the power line was de-energized at the request of Mr. Grillis's employer.

■ The plaintiffs point out the two incidents of de-energization after the date of the accident, July 18 and September 8, 1975, which were proffered, came from logbook entries which did not give any information as to why the line was de-energized or who had requested de-energization. We do not believe these dates were relevant to the issue raised by the power company that it had de-energized the lines at the request of Mr. Grillis's employer.

■ The plaintiffs also point out that the trial court did let into evidence the dates of de-energization before the accident, and this evidence, including the proffered testimony, would have revealed no consistent pattern or de-energization policy. In reviewing the record, we do not find that the de-energization issue was the only liability theory pursued against the power company. The evidence on this issue was conflicting even when the proffered testimony is considered. Our traditional rule with regard to a trial court's rulings on evidence is set out in Syllabus Point 5 of *Casto v. Martin*, 159 W.Va. 761, 230 S.E.2d 722 (1976):

> " 'The action of a trial court in admitting or excluding evidence in the exercise

of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion.' Point 10 Syllabus, *State v. Huffman,* 141 W.Va. 55, 87 S.E.2d 541 (1955)."

We do not find that the trial court abused its discretion on this evidentiary point.

For the foregoing reasons, we affirm the judgment of the Circuit Court of Brooke County.

Affirmed.