# CHARLESTON.

## VEITH v. SALT CO.

Submitted January 10, 1902.    Decided March 8, 1902.

1. NUISANCE—*Lawful Business—Damages.*
     Where one places a steam boiler upon his premises and oper-
     ates the same in lawful business with care and skill, so that it
     is no nuisance, in the absence of proof of fault or negligence in
     him, he is not liable for damages to his neighbor occasioned by
     the explosion of the boiler.   (p. 97).

2. NEGLIGENCE—*Presumption does not arise.*
     A presumption of negligence does not arise from the mere
     fact of the explosion of a steam boiler used by one engaged in
     lawful business.  Negligence on his part must be shown.   (p.
     99).

3. JURY—*Instruction—Particular Fact.*
     While two special questions covering the same inquiry should
     not be put to a jury, yet if one covering some matter of an-
     other is so drawn as to more definitely and pointedly inquire
     as to a particular matter controlling the case, it should be given.
     (p. 100).

Error to Circuit Court, Mason County.

Action by Marianna Veith against the Hope Salt and Coal
Company.  Judgment for plaintiff.  Defendant brings error.

*Reversed.*

H. R. HOWARD and J. U. MEYERS, for plaintiff in error.

W. R. GUNN and C. E. HOGG, for defendant in error.

BRANNON, JUDGE:

In an action of trespass on the case, in the circuit court of
Mason County, brought by Marianna Veith against Hope Salt
and Coal Company, the plaintiff recovered a verdict and judg-
ment against the defendant, and it has brought the case up to
this Court.

The ground of the action was that the defendant company
carrying on the business of manufacturing salt and using a
boiler in its work inflicted injury upon the plaintiff by damage
done to her residence from the explosion of said boiler.  We
see at once that the case involves a conflict or clash between two
plain rights vested in the parties to the suit.  The right of the

company is the right to use its own premises in legitimate lawful business. This is a constitutional right of liberty, and of the plainest import. The right of Mrs. Veith is the right to abide upon her own premises in peace and security free from hinderance or disturbance by anyone. She received injury from the defendant's act. Does that alone, without more, give her the right by law to call upon the company for reparation? Upon first impression we would likely answer this question in the affirmative. The plaintiff has received damage, without fault on her part, from the act of her neighbor, and it would seem plausible to say that this neighbor must make her whole. And such is the law under some decisions very well considered in England, particularly the case of *Fletcher* v. *Rylands,* 1 Exchq. 265, L. R., where a party constructed a water reservoir upon his land and the water burst through into some coal shafts which had been made by another party, not known to the owner of the reservoir. The owner of the reservoir was held liable for damages upon the ground that anyone who for his own purposes brings upon his own land anything that may do mischief, or does mischief, does so at his peril, and if injury results therefrom to another, he is *prima facie* answerable for all damage therefrom. But such is not the American law. That law says that the English rule detracts from the right of the owner of land to use it in legitimate business, detracts from the efficacy of that ownership, cripples a plain right of ownership, and makes that owner an insurer against harm to others resulting from mere accident in the lawful use of his property. The American law does not make mere damage a *prima facie* cause of action, but requires negligence on the part of him who inflicts the injury. That latest and best work on the subject of negligence, Thompson's Commentaries on The Law of Negligence, in Vol. 1, sec. 14, lays down the law thus: "If, in the prosecution of a lawful act, a casuality purely accidental happen, and one which cannot be ascribed to any want of due care or skill on the part of the party sought to be made liable therefor, no matter how grievous, no action can be supported for the damage arising therefrom. The meaning is that where a man, proceeding in a lawful business, exercises reasonable care, the law does not make him an insurer of others against those consequences of his actions, which reasonable care and foresight could not have prevented. The law justly ascribes such consequences to inevitable misfor-

·tune, or the act of God, and leaves the harm resulting from them to be borne by him upon whom it falls. The contrary would obviously be against public policy, because it would impose so great a restraint upon freedom as materially to check human enterprise. In such cases, therefore, the law contents itself with inquiring whether any other person than the sufferer was at fault, and if so, it requires him to reimburse the sufferer for his loss, unless the sufferer himself was also at fault. This doctrine, however, is predicated only of unforseen accidents which result from the doing of lawful acts. If a person do an act which is wrongful *per se*, or in the nature of a public nuisance, he becomes, in respect of it, an insurer to the public, and · is liable for any injury which may happen in consequence of it to a person in the exercise of ordinary care, irrespective of any question as to the degree of skill or diligence exercised by himself, his agents or servants, to prevent such injury?"

In the noticeable case of *Losee* v. *Buchanan*. 51 N. Y. 476, (10 Amr. R. 623), the case of injury from the explosion of a boiler to property of a neighbor was fully considered, and the court adopted this syllabus: "Where one places a boiler upon his premises and operates the same with care and skill so that it is no nuisance, in the absence of proof of fault or negligence upon his part, he is not liable for damages to his neighbor occasioned by the explosion of the boiler."

In the case of *Cosulich* v. *Standard Oil Company*, 122 N. Y. 118, (19 Amr. St. R. 475), this subject is fully considered and the results stated that one conducting lawful business is not under obligation of saving others harmless from it by inevitable accident, and he performs his duty when he uses reasonable care to save others from injury, and that he who alleges negligence as a foundation of his right to recovery must point out by evidence the defendant's fault, as the presumption is, until the contrary appears, that every man has performed his duty.

Thus it clearly appears that the plaintiff must show, not simply injury to her property from the explosion of the boiler, but must add to the fact of injury evidence of some negligence by the defendant. There is some evidence, tending to show defect in the original construction of the boiler by reason of insufficient stay because of the use of railroad iron for the purpose of stays; but the declaration never mentions defect in the construction of the boiler as a ground of action. A declaration for

tort must specify with reasonable certainty the main or primary act of omission or commission constituting the negligence, and it cannot state one act as the cause of the damage and then allow the plaintiff to prove another. This declaration charges two acts constituting the negligence, one that the defendant allowed the boiler to become dangerous and out of repair and the other that the defendant misoperated the boiler, but does not charge defect in original construction. If the declaration so charged, there is no evidence to show that the defendant knew or could have known of this defect. The engine had been in use a good while and operated well. Numerous engines of the same character were used in like work in the same neighborhood. The law is as expounded in *Losee* v. *Buchanan, supra,* that if the explosion came from defect in the manufacture of the boiler the owner is not liable in the absence of proof that such defect was known to him or discoverable upon examination, or by the application of known tests, and that the fact that the boiler was purchased of reputable manufacturers is proper to be considered as tending to justify its use. This boiler was carefully examined before its purchase and found to be good. It took the place of an old boiler. A witness for the plaintiff claiming to have some knowledge of boilers said that the boiler looked to be all right. The defendant was not bound to use in his business the very safest and best machinery. *Berns* v. *Coal Co.,* 27 W. Va. 285. There is absolutely no evidence at all to show mismanagement of the boiler.

But the plaintiff would sustain her case on the theory that without any proof of negligence she can succeed. It is contended for her that the mere explosion of the boiler alone and *per se* creates, at least *prima facie,* a presumption of negligence, calling upon the defendant to repel such presumption under the doctrine known in law as *res ipsa loquitur*—the thing itself speaks. This subject is discussed in *Snyder* v. *Wheeling Electrical Co.,* 43 W. Va. 661. But does this case fall under that doctrine? Is it possible that every operator of the millions using boilers is thus a guarantor of them against all latent defects? There is a division of authority here it is true; but the reason and the preponderance of authority are against the doctrine that the mere explosion of a boiler, without proof of some negligence, imposes upon its owner liability.

The Supreme Court of the United States in *Texas and Paci-*

*fic Railway* v. *Barrett,* 166 U. S. 617, denied this doctrine and held that the plaintiff must establish negligence to impose a liability for damage resulting from the explosion of a boiler. In the above cited case of *Cosulich* v. *Standard Oil Co.,* it was held that no presumption of negligence arises from the explosion of an oil tank in the yard of the defendant's petroleum factory causing oil to flow through a pipe and set fire to plaintiff's vessel. The court held that there is a distinction between actions for negligence where a contract relation exists between the parties, and those in which the defendant owes to the plaintiff no other duty than to use such ordinary care as the nature of the business demanded to avoid injury to others, and that in the latter class of cases, the mere fact that an accident happened to the plaintiff, without more, will not amount to *prima facie* proof of negligence on the part of the defendant. Such a rule as that contended for would be very dangerous, as it would make every user of a boiler an insurer against accident and would almost put an embargo on the use of boilers in legitimate business. Much authority can be cited to support this proposition. *Huff* v. *Austin,* 46 Ohio St. 386, (15 St. R. 613); *Young* v. *Bransford,* 12 Lea 232; *Marshal* v. *Wellwood,* 38 N. J. L. 339. Under these principles it was error in the court to refuse the following instruction, because it propounds good law and was vital in the case as presenting to the jury the law put to it on the defendant's side of the case: "The jury are instructed that they cannot infer negligence from the mere explosion of the boiler. The plaintiff must prove in addition to such explosion, such facts and circumstances as will logically raise an inference of negligence on the part of the defendant before they can find for the plaintiff. The presumption of law is, that persons in the performance of a lawful act have done their duty, and this presumption continues until the contrary is proven." Without that instruction the defendant's theory of the law of the case was not presented to the jury.

The defendant asked the court to put to the jury eight special questions. "1. Was the boiler which exploded and caused the alleged injury out of repair and defective at the time of the explosion?" "2. If it was out of repair and defective at the time of the explosion, in what particular was it out of repair, and what caused it to be out of repair?" "3. If it was out of repair at the time of the explosion, did it so imperil the boiler

as to cause the explosion by being out of repair?" "4. What caused the boiler to explode?" "5. Did the defendant by its servants and employes operate and manage said boiler in such unreasonable manner as to cause the explosion; if so in what did the unreasonable conduct and acts of the defendant, its servants and employes, consist, causing the boiler to explode?" "6. If the boiler exploded by reason of defects therein, what were the defects that caused such explosion?" "7. If the boiler was out of repair and defective, so as to cause it to explode, was the want of repair and defective condition occasioned by the negligent conduct of the defendant, its servants and employes?" "8. If the boiler did explode by reason of being out of repair, and in a defective condition by reason of being out of repair, did the defendant know prior to the explosion, or could it have known by the exercise of ordinary and reasonable care and inspection of such defects in the boiler which caused the explosion?" The court put to the jury questions 1, 6 and 8, but refused the others. It seems to us that some of these questions were repetitions of others. Number 2 is fairly covered by number 6, and therefore there is no error in refusing it. Number 3 should have been given. It squarely puts the question whether the boiler was out of repair so far as to cause the explosion. That question is not squarely put by numbers 1 or 6. If answered in the negative it would overrule the general verdict and was therefore material. *Bess* v. *C. & O. R. R. Co.,* 35 W. Va. 492. There was no question submitted that made the direct explicit inquiry made by this question. As held in *Peninsular L. Co.* v. *Franklin Ins. Co.,* 35 W. Va. 666, the object of a special question is to call the jury's special attention to a careful, deliberate investigation of a particular fact, distinct from other facts and one controlling the case. Where is there any reason against number 4? It involved the pith of the case. There is no error in refusing question 5 as the court told the jury that it could not find for the plaintiff on the theory of mismanagement of the boiler. We think it was error to refuse to put question number 7.

We do not see that the evidence of Glesencamp was incompetent. He had had a long, practical experience with boilers.

For these reasons we reverse the judgment, set aside the verdict, grant a new trial, and remand the case to the circuit court.

*Reversed.*