# · CHARLESTON

MARSHALL WINDOW GLASS CO. *v.* CAMERON OIL & GAS CO.

Submitted September 10, 1907.   Decided December 10, 1907.

1.  GAS—*Natural Gas—Care in Delivery.*
    The duty devolving upon a person or a corporation engaged in furnishing to consumers thereof natural gas for fuel and light is not that of insurer, but to exercise such care, skill and diligence in all its operations as called for by the delicacy, difficulty and dangerousness of the nature of the business, that injury or damage to others may not be caused thereby.   (p. 203.)

2.  SAME—*Injuries from Explosion.*
    The application of the rule of *res ipsa loquitur* depends upon the facts and circumstances of each individual case; but the mere fact of explosion of a gas regulator, which up to the time of the accident had properly performed its functions, is ' not a circumstance to which the rule may be applied.   (p. 206.)

Error to Circuit Court, Marshall County.

Action by the Marshall Window Glass Company against the Cameron Oil & Gas Company.   Judgment for defendant, and plaintiff brings error.

*Affirmed.*

SIMPSON & SHOWACRE, W. A. MCGLUMPHY, and CHARLES E. CARRIGAN, for plaintiff in error.

CHARLES C. NEWMAN, A. LEO WEIL, CHARLES M. THORP, and S. LEO RUSLANDER, for defendant in error.

MILLER, PRESIDENT:

In an action on the case, the plaintiff seeks to render liable the defendant for loss by fire of its factory, due to explosion of gas, the alleged result of negligence of defendant.   On the trial, the motion to exclude the plaintiff's evidence and direct a verdict for defendant prevailed; and it is to review the judgment of the circuit court on the verdict so found that the case is brought here.

Gas was furnished by defendant, under written contract of August 1, 1903, by which it agreed, among other things, to supply plaintiff gas for one year thereafter at a stipulated price per thousand feet, to maintain pipes or connections to

plaintiff's plant, and to place on the plaintiff's premises meters and regulators to control the flow of gas; and the plaintiff agreed to furnish, put in place and keep in repair all pipes, valves and fittings necessary to distribute and burn said gas. The contract provided also that the defendant should at all times have access to said premises to inspect the pipes, meters and regulators; that the pressure of gas should be determined by it, under the supervision of its superintendent; that the ownership of the regulators and all other fixtures placed by it on said premises should remain in it, and that it might remove or replace the same before or after termination of the contract; that, "as production of gas wells and conveyance of it over long distance are subject to accidents, interruptions and failures which cannot be forseen or prevented by any reasonable care or expenditures, the company does not by this contract undertake to furnish to the consumer a full and uninterrupted supply of gas for the period named herein, but only to furnish such a supply and for such length of time, limited to the term hereof, as its wells and pipe lines are reasonably capable of, it being understood that the company may require a block or discontinuance of operations at any time by the consumer temporarily, in whole or in part, without prejudice to its right to continue its supply to other consumers," that "it is expressly agreed by the consumer that the company shall not be liable for any loss, damage or injury that may result either directly or indirectly from such shortage or interruptions;" that "the company shall not be liable to the consumer or to any other person for any loss, damage or injury resulting from the use of the gas in the said plant, all risks in the said use being assumed by the consumer."

The declaration is in two counts. The only charges of negligence are that the defendant negligently permitted gas to pass through the plaintiff's pipes, etc., in such quantities and at such pressure that the same were rent asunder, causing escape of gas and consequent ignition and destruction of the factory; and that it permitted its regulators and other fixtures to be and remain out of proper order and repair, so that an ecessive pressure of gas passed into the pipes and fittings of plaintiff, causing ignition and destruction of the factory. The declaration does not, as stated by plaintiff's

counsel, charge negligent and inadequate construction by the defendant of its system of pipes and regulators; and consequently, even if there was evidence (which there was not) to support such charge, it could not have been submitted to the jury.

It is conceded that, if there was evidence tending in an appreciable degree to support the charges of negligence, there was error in the judgment. In support of the first charge, the plaintiff relies upon the evidence of its president and other employes that, shortly before the explosion, there was a shortage of gas, resulting in complaint on its part at the office of the defendant, followed shortly it is claimed by such quantities of gas and pressure as could not be resisted or controlled by the pipes and fittings of the plaintiff. It is admitted that up to that time gas had been furnished in reasonably proper quantities and at proper pressure; that all pipes, regulators and meters of defendant had performed their proper functions. There is absolutely no evidence that the quantity of gas and pressure at the time of the explosion were any greater than usual. But it is claimed that, after the complaint of shortage, there was a sudden onrush of gas, causing flames therefrom in the furnaces and ovens of the plaintiff to ignite and destroy the building and all its property contained therein; that these facts, accompanied by the further fact proven that one of the defendant's regulators about the same instant exploded in the regulator house, furnished evidential circumstances to make a *prima facie* case of negligence in the particular charged, as results could not have followed in the ordinary course of events. But this position is met by the evidence of the same witnesses for the plaintiff, one or more of whom say they noticed no unusual pressure at their places in the factory. One says that, after the flames came out of the furnaces and some of the workmen had jumped out of the windows of the building, they crawled back, and he turned the valves in the factory and the gas came down normal, when "the boys came back laughing and joking;" and, speaking with respect to the condition then at the blow furnaces, he says that, after the gas came on in large quantities, he did not close the valves there entirely, but "turned them down so the fire would stay in the furnace," and that after he did this he had no excess of gas at

the blow furnace.   This same witness says that the reason they did not shut off the gas at the flattening oven, where the flames were coming out and setting fire to the building, was because they could not get at the valves.   The valves had been so located that they could not be reached under the circumstances; if they had been placed differently, plainly the gas could have been shut off there as well as at the blow furnace, and the damage averted; for it was not until after failure to reach the valves there that they proceeded to the regulator house for the purpose of obtaining control of the gas.   He also says "there was nothing wrong with the line; the only thing wrong was with the gas."   There is other evidence of like character tending to show no unusual pressure, but that, on account of the low pressure shortly prior to the explosion, the valves in the factory had all been thrown wide open, and were left in that condition when the gas came on again in quantities sufficient to bring about the conditions at the time of the explosion.

But how about the regulator which exploded?   If there was no unusual pressure in the factory, the explosion of the regulator we cannot assume was due to over-pressure of gas coming through the line.   But the evidence was that the president, with the the blacksmith and another employee, without notice to the gas company, almost at the instant that the gas came on, and immediately after they had unsuccessfully attempted to reach the valves at the flattening oven to control the gas there, ran to the regulator house, where the blacksmith, by direction of the president, suddenly shut off the gates on the outlet or low pressure side of the regulator which exploded, and that almost instantly the explosion occurred.   There are admissions by the witnesses for the plaintiff of other prior interferences by its employees with at least one of the regulators of the defendant in piling weights upon it, against which protests were made by the defendant.   The blacksmith explains that the reason why he did not shut off the inlet gates in place of the outlet gates was because there was no wheel on the inlet gates; that he knew the proper thing to do was to shut of the inlet gates, but he then had no wrench with which to do so.

We do not think the jury could have said, nor can we say, from this evidence, that there was an undue pressure of gas.

The fact that it was controlled by the valves of the plaintiff where they could be reached, and that there was no explosion of the regulator until after interference with the gates in front of it, it seems to us precludes all idea of undue pressure.

With respect to the charge of want of proper repair of pipes, regulators, etc., there is no affirmative evidence to support it. The plaintiff here relies entirely upon the fact that the explosion occurred and the regulator was blown open, and seeks to apply the rule *res ipsa loquitur* to the fact of the explosion in support of both branches of this case. But, without more, we do not think this rule applicable. The defendant in its contract had provided against damage to plaintiff in the general use of gas in its plant. It was not an insurer of the plaintiff's property. As was held in *Barrickman* v. *Oil Co.*, 45 W. Va. 634, the mere fact, that a building furnished with gas was set on fire from the gas is not sufficient to justify the inference that an increased pressure of gas caused the fire. The defendant here was engaged in lawful business, so recognized by its contract with the plaintiff. The maintenance by it of the pipes, meters and regulators on the plaintiff's premises was not a nuisance, although employed in supplying the plaintiff with a dangerous agent. The only duty devolving upon it under the law was to exercise such care, skill and diligence in all its operations as called for by the delicacy, difficulty and dangerousness of the nature of its business, that injury or damage to others might not be caused thereby. *Barrickman* v. *Oil Co.*, *supra; Cosulich* v. *Oil Co.*, 122 N. Y. 118. The maxim *res ipsa loquitur* was not applied by this Court in the case of the explosion of a boiler — *Veith* v. *Salt Co.*, 51 W. Va. 96; nor in the case of an explosion of natural gas in *Pennsylvania—Alleghany Heating Co.* v. *Rohan*, 118 Pa. 223; and we can see no reason, in principle, for applying it to the case of an exploded gas regulator. The application of this rule depends upon the facts and circumstances in each individual case; but the bare fact of the explosion of the regulator here, which up to the moment of the accident had performed its functions properly, was not a circumstance from which the jury, if the evidence had been submitted to it, could properly have inferred negligence as to the pressure of gas or repair of the instrument itself.

Whether there was contributory negligence of the plaintiff we need not say, as we find no evidence of negligence of the defendant.

What caused the explosion of the regulator we do not know. It may have been due to the sudden turning off of the gates by the plaintiff's employee, or to circumstances and conditions over which the defendant had no control or power of prevention. If the former, it was due to the negligent act of plaintiff; if the latter, defendant could not be held liable; in neither event could the jury have been justified, upon the evidence, in giving a verdict for the plaintiff.

We therefore affirm the judgment.

*Affirmed.*