H. B. AGSTEN & SONS, INC., *v.* UNITED FUEL GAS COMPANY

(No. 8301)

Submitted May 5, 1936. Decided May 26, 1936.

516

*Harold A. Ritz, R. K. Talbott,* and *B. J. Pettigrew,* for plaintiff in error.

*Steptoe & Johnson, Stanley C. Morris, W. Ervin Miller,* and *Robert W. Lawson, Jr.,* for defendant in error.

KENNA, JUDGE:

This action of trespass on the case was brought in the Court of Common Pleas of Kanawha County by H. B. Agsten & Sons, Inc., against United Fuel Gas Company for the purpose of recovering damages resulting from an explosion that wrecked an office building occupied by the plaintiff and situated upon the south side of Washington Street between Court Street and Truslow Street in Charleston. To a verdict and judgment of $2,000.00 for the plaintiff, defendant prosecutes this writ of error.

The building was a small one-story office building standing upon a triangular shaped lot at the point where Shirley Street runs diagonally into the south side of Washington Street. That part of Washington Street upon which the building fronted was opened by the City of Charleston in 1923. The roadway is forty feet wide and on each side there is a ten-foot sidewalk. At the point where the building stood, it was necessary to do a good deal of filling in order to establish the grade of the street, and after the necessary fill was made, the water and gas utilities were required to lay their mains before the street paving was placed. The United Fuel Gas Company laid an eight-inch cast iron main with welded joints parallel to and four feet nine inches from the south curb of Washington Street. The street had been graded some two or three feet beyond the curb on each side, on the south leaving the place intended for a sidewalk and the lot abutting thereon considerably below the level of the street. This was later filled in to the street level. When the defendant laid its main, it made service connections to the property line for each lot as its frontage was reached.

On the morning of December 20, 1934, at about two A. M., an explosion demolished the Agsten building and practically destroyed its contents. The plaintiff sought recovery on the ground that the explosion was caused by

natural gas which leaked into the building from a rotted and corroded service line between the property line and the curb, the gas having been ignited because of the fact that one of the stoves in the building, which was left burning the night before, was burning at the time of the explosion. The alleged negligence of the defendant consisted in, first, improper installation of the service line from the curb to the property line in the year 1924; and second, in not properly maintaining the same line. The plaintiff's theory is that there is proof sufficient to justify a finding by the jury that this service line, installed by the defendant, was covered by it with material consisting largely of coal cinders which are known to have a corrosive and deteriorating effect upon black steel pipe such as the service line was, and to sustain recovery upon either the theory of negligence in the original installation or of negligence in the maintenance. The plaintiff's position is that in either case, the wrongful act of the defendant respecting the service pipe caused it to eat away and become full of holes resulting in the leakage of gas into the building and causing the explosion.

The trial resulted in a verdict and judgment for the plaintiff in the sum of $2,000.00. Application was made to the Circuit Court of Kanawha County for a writ of error, which was declined on the ground that the judgment of the trial court was plainly right, and from the judgment of the circuit court, this writ of error is prosecuted.

The first assignment of error sets up the contention that under the rules and regulations of the defendant company, approved by the Public Service Commission and made a part of the written application for gas service signed by the plaintiff and filed with the defendant, it is made the duty of the consumer to keep the line in good repair from the street connection stopcock to the place of consumption, and that the regulations expressly place upon the consumer the responsibility of detecting leaks and defects therein. The plaintiff meets the contention thus advanced by the defendant

by pointing out that in another rule approved by the Public Service Commission, it is provided that the gas company shall not be liable for any injury to person or property from any cause arising inside the street connection stopcock *which is not the result of negligence of the gas company.* Plaintiff argues that in the light of this provision, the other provisions to the effect that the plaintiff shall have the responsibility of maintaining the service line from the stopcock and curb box and for the detection of leaks and defects therein, are of no avail, and, furthermore, that to give the latter provisions the effect defendant contends for, would result in exempting the gas company from is own negligence, a conclusion shocking to good conscience and against public policy. A number of cases is cited to sustain the proposition advanced, but we do not believe that it is necessary to discuss them for the reason we think they have no application to this case. It is readily admitted that the company could not exempt itself from all negligence by simply prescribing a rule, even with the approval of the Public Service Commission. But that is not the effect of the rules in question. In the first place, it is provided that the company shall install all of the connection from its main to the property line, that this connection shall remain the property of the company, and that all repairs made to it shall be at the expense of the gas company. The responsibility for detecting defects and leaks in the service line (i. e. the line from the curb box to the property line) and in the line upon the consumer's premises, is placed upon the consumer, as is the duty of keeping the service line and the lines upon his premises in good repair. But it is provided that the consumer cannot change nor interfere with the service line without the consent in writing of the utility. It will thus be seen that under the rules both the utility and the consumer have certain obligations to perform with respect to the service line from the curb box to the property line. We believe there is no essential conflict in this situation. The rules clearly have the effect to exempt the utility,

after proper installation, from the duty of inspecting the service line between the curb box and the property line. This duty is placed upon the consumer. The consumer is required to keep the service line in good repair, but he is prohibited from changing it or interfering with it without the consent of the utility. The utility is obligated to pay the cost of repairs, and it has the right to enter upon the consumer's premises to shut off the gas and remove its own property for the purpose of making repairs. The practical application of these regulations doubtless would be that the consumer is obliged to inspect the service line for the purpose of detecting leakage resulting from any cause other than negligent installation by the company, and upon discovering it to notify the utility which thereupon would be obliged to consent to the making of the required repairs at its own expense, and upon its failure to do so. would be guilty of negligence. Either this, or the utility would have the right to make the repairs if it saw fit. In any event, it is the plain import of these rules that the consumer should be obligated to make the necessary inspection of the service line for the purpose of keeping it in proper repair and guarding it against leakage resulting from ordinary wear. We cannot regard this as being burdensome, unreasonable or arbitrary. The consumer is, of course, in daily contact with his gas furnishing and consuming equipment. It is clearly his duty to inspect and keep in repair all of the gas pipe and equipment upon his own premises with the exception of the meter and its immediate fittings. The only thing that separates that part of the equipment upon the premises from that part not upon the premises is the imaginary property line. In order thoroughly to test the pipe upon the premises, it is necessary to test the pipe off the premises as far as the stopcock in the curb box. Here, the consumer's responsibility stops. The utility's responsibility beyond this point is fixed by the rules and regulations. The test to discover leaks in the service line is a comparatively simple and inexpensive one. It is made by shutting off the gas at the curb box stopcock and applying

a pressure pump to the line at some point upon the consumer's premises while all the outlets are closed. This tests all the pipe, including the consumer's, inside the curb box. This is not an unreasonable duty to place upon the consumer. So that we are of the opinion, in so far as maintenance of the service line is concerned, that the duty was upon the consumer to inspect that line, and to discover leaks therein that were caused by improper maintenance. There is no question in this case as to the duty of the utility upon notice or discovery of leakage.

However, the plaintiff takes the position that its right of recovery does not depend entirely upon improper maintenance. It contends that by reason of having installed the pipe in the first instance in cinders, the company was negligent, and that, whereas, steel pipe of the kind placed in the service line, if properly covered with earth or clay, would, according to the testimony, last from twenty-five to thirty-five years, the pipe which caused the leakage here had only been in place for ten years, during which time the duty to inspect for leaks would not ordinarily arise. Plaintiff, on this basis, argues that the negligent installation was the cause of the leaks in the service line. There is nothing in the rules and regulations of the company, as approved by the Public Service Commission intended to exempt the defendant from negligence on account of the improper installation of the service line. To the contrary, the duty of installing it is expressly placed upon the utility, and this duty is required, of course, to be performed in a reasonably skillful and careful manner. The proof shows that to install pipe of the nature of that used in the service line in cinders is generally recognized as bad practice, which results in deteriorating the pipe much more rapidly than would follow from proper installation. There was denial on the part of the utility that this had been done, but the proof of the plaintiff, we think, is sufficient to justify the jury in believing, if it cared to, that the fact was established by a preponderance of the evidence. So that the case, viewed from the standpoint

of a recovery on account of the negligent installation of the service pipe, we think, is sufficient to sustain the verdict in so far as the negligent installation itself is concerned.

The defendant, however, at this point asserts that the case of the plaintiff still fails because, first, there is no proof showing that the leakage in the service pipe could have or did result in gas getting into the building where the explosion occurred, and second, that the proof shows leaks in the pipe within the plaintiff's property line from which the gas causing the explosion is just as likely to have leaked as it is to have come from those leaks outside the building and in the service line.

The rule in West Virginia is that the mere occurrence of a gas explosion does not give rise to the doctrine of *res ipsa loquitur*. The doctrine may be applied if the cause of the explosion is traced to an instrumentality controlled exclusively by the defendant. *Bell* v. *Huntington Development & Gas Co.*, 106 W. Va. 155, 145 S. E. 165; *Groff* v. *Charleston-Dunbar Natural Gas Co.*, 110 W. Va. 54, 156 S. E. 881; *Laurent* v. *United Fuel Gas Co.*, 101 W. Va. 499, 133 S. E. 116; *Marshall Window Glass Co.* v. *Cameron Oil & Gas Co.*, 63 W. Va. 202, 59 S. E. 959. That, we think, is not the state of the record before us. This being true, it follows that plaintiff seeking recovery in this case is obliged to prove damages that were the result of an explosion of natural gas, and, furthermore, that some negligent act of the defendant was the cause of the explosion. In this record, the plaintiff relies upon the leakage of gas from pipes not upon the premises where the explosion occurred. There is no proof as to how the gas which escaped from points not upon the premises where the explosion occurred, got to the point of the explosion. The defective service pipe was some four feet under ground and beneath the sidewalk. The plaintiff's proof shows it to have been covered with a mixture of broken brick and concrete and cinders. If the escaping gas took its natural vertical course from that part of the service line that was beyond the plain-

tiff's property line, it would seem that no part of it would have accumulated upon the property and in the building of the plaintiff. It would have been very much more likely that the accumulation of gas in the plaintiff's building was due to the escape of gas in the admittedly defective six-inch nipple that was placed by the plaintiff almost entirely inside of the plaintiff's property line. It would be reasonable to suppose that gas which would escape vertically from this nipple would have a very much better chance to accumulate inside the building than would gas which escaped vertically from pipes beyond the property line of the plaintiff and beyond the nipple. On the other hand, if the argument is advanced that the gas in the pipe beyond the property line did not escape vertically, but moved in a horizontal or lateral direction toward the building and along the very pipe from which it escaped (and this theory would seem to involve the extreme difficulty of concluding, without proof, that gas which was given room enough to escape from the pipe would immediately be so confined that it could not move vertically but must move laterally along the pipe, and, furthermore, that it would move toward the plaintiff's premises in seeking escape and not away from them), then we have a situation in which, in order to pass onto the property of the plaintiff and accumulate in his building, the escaped gas would be obliged to pass along the outside of the six-inch nipple installed by the plaintiff, from which also gas was leaking. If this occurred, then, on the plaintiff's own theory, the gas leakage for which the defendant was responsible would necessarily have mingled with the gas leakage from the nipple installed by the plaintiff for which it was responsible, before any gas reached the point of the explosion upon the premises. These would seem, in general, to be the only possible theories under this proof to account for the natural gas that undoubtedly did escape. Neither theory takes into account the proof of the plaintiff which shows that a leaking knuckle was discovered in the plaintiff's own pipe and by the plaintiff's own test, nor

the proof of the defendant established by a test before the jury that there was a corroded leak in the pipe upon the plaintiff's own premises, in addition to the leak in the extension nipple. Either theory that we have advanced, in so far as this proof is concerned, is a matter of pure conjecture. There is no evidence tending to show that gas which escaped from beyond the property line found its way into plaintiff's building. We are, therefore, unable to say, on the basis of this record, that the jury was justified in concluding that the negligent act of the defendant was the proximate cause of the explosion that wrecked plaintiff's building.

Another assignment of error is based upon the fact that the trial court permitted the plaintiff, over the objection of the defendant, to show that after the explosion, the defendant replaced the service line with galvanized pipe, and that this type of pipe is better adapted to the resistance of the kind of corrosion that had rendered the same line leaky as originally laid. To justify this, the plaintiff relies upon the case of *Groff* v. *Charleston-Dunbar Natural Gas Company*, 110 W. Va. 54, 156 S. E. 881. In the case cited, it was shown that the defendant company, after the explosion, had repaired the gas main causing the leaks. This was done in order to show the control and dominion exercised by the gas company over the line in question, the issue being whether the gas company, or a real estate company that had put the main in, was responsible for the explosion. Apart from the construction of the rules and regulations of the Public Service Commission, there is no such issue in this case. This evidence could not constitute a practical interpretation of the rules and regulations in question for the reason that under those rules and regulations, the company is plainly given the *right* to make repairs as distinguished from having that *duty* imposed upon it. The only question raised as to the responsibility for the leakage outside the property line is a pure question of law and there is no factual controversy concerning it. We therefore think that, considering the purpose of the

proof that was advanced in the *Groff* case and the factual issue involved there, that case is no authority for the introduction of the same sort of proof here. Furthermore, the proof in the *Groff* case was confined to the fact of the repairs having been made. It was not sought to show in that case that improved materials had been used for the evident purpose of inferring that the original materials were inferior. We think that the trial court erred in permitting this proof.

Still another assignment of error has to do with the measure of damages. The case went to the jury upon the theory that the plaintiff was entitled to recover, if at all, for the full value of the building that was destroyed. The proof shows that the building was erected by the plaintiff upon ground that it did not own, but which it leased from another. The lease was not put in evidence nor was there any special contract between the lessor and the lessee shown. From the description of the building contained in the record, there can be no doubt but that it was a permanent fixture attached to the land. Under the general rule, too well established to require the citation of authority, the facts shown, without more, would vest the title to the building in the lessor. The recoverable interest of the lessee, without more proof than this record contains, would not be the full value of the building. That interest would depend upon the rental paid and the other terms of the plaintiff's lease. These are not shown in this record, and consequently, we are not at liberty to discuss what the measure of damages should have been. We are of the opinion, however, that the court erred, upon the state of the proof disclosed by this record, in submitting to the jury a measure of damages based upon the full value of the building. Another irregularity in the proof, perhaps not in itself prejudicial, is the fact that the plaintiff is H. B. Agsten & Sons, Inc., a corporation, whereas, H. B. Agsten, president of that company, testified that he leased the land and built the building. Without explanation that he intended by this testimony to refer to the land

having been leased and the building having been built by the corporation, which the record does not appear to contain, it is taking a good deal for granted to conclude that such was the effect of the testimony.

It is contended also by the plaintiff in error that the measure of damages with reference to the personal property, both destroyed and damaged, was not correctly submitted to the jury. In view of the large number of items of this personal property, it is impossible to extend this opinion to a discussion of each. The ordinary measure of damages concerning personal property is the difference in its market value immediately before and immediately after the damages. If there is no market, the difference in the reasonable worth may be the measure of damages. *Biederman, Inc.* v. *Henderson*, 115 W. Va. 374, 176 S. E. 433. Cost price may be shown and is relevant, but it is not controlling. In the event of the re-trial of the case, the measure of damages for the personal property should be governed by the rules indicated by these general observations. We do not wish to be understood as approving the theory upon which this element of damages was presented at the trial.

The last assignment of error has to do with instructions Nos. 1, 2, 3, 7, 8, 9, 11, 13, 14, 15, 17, 18, 19, 20, 21 and 22 tendered on behalf of the defendant and refused, as well as to the three instructions given for the plaintiff.

The first instruction given for the plaintiff, after quoting a part of section 4 of chapter 15-0 of the Code of 1923, requiring public utilities to establish and maintain adequate and suitable facilities, told the jury that all of the rules and regulations of the Public Service Commission of West Virginia and all contracts entered into between the plaintiff and the defendant were subject to this statute. The instruction went on to tell the jury that if they believed from the evidence that the defendant did not exercise ordinary care to establish adequate and suitable facilities for the distribution of its gas and that such lack of care occasioned an explosion

which damaged the plaintiff's building, and if they further believed that the plaintiff was not guilty of negligence proximately contributing to the explosion, they should find for the plaintiff. This instruction plainly left it to the jury to interpret the rather intricate rules and regulations established by the defendant company and approved by the Public Service Commission of West Virginia which had been introduced in evidence, and to determine whether those rules and regulations were in violation of the statute, and if so, to what extent. This is the clear import of the instruction. Such matters are matters for the court to determine and not questions for jury consideration. We therefore are of the opinion that the giving of this instruction was error.

Plaintiff's instruction No. 2 proceeds upon the theory that the defendant's negligence in installing the service line may be made the basis of recovery if it is shown to be the proximate cause of the explosion which damaged the plaintiff's building. The instruction tells the jury that there is nothing in the rules and regulations approved by the Public Service Commission that would prevent a recovery by the plaintiff on this theory. As we have already stated, in so far as the effect of the rules and regulations approved by the Public Service Commission is concerned, we are of the opinion that this instruction correctly interprets them. However, as we have also already said, we are of the opinion that this record does not show that the negligent installation of the service pipe was the proximate cause of the explosion which damaged the plaintiff's building.

A third instruction tendered by the plaintiff and given by the court tells the jury that the burden is upon the defendant to prove contributory negligence by a preponderance of the evidence. This instruction, we believe, correctly states the law. Of course, contributory negligence may be shown by the evidence of the plaintiff as well as by the evidence of the defendant, and the instruction could be improved by making that fact ap-

parent. However, we are of the opinion that other instructions given sufficiently clarify this proposition.

Defendant's instruction No. 1 instructs the jury to find for the defendant. On the basis of the discussion of the evidence herein, we are of the opinion that this instruction should have been given.

Defendant's instruction No. 2 tells the jury that the defendant owed the plaintiff no duty to inspect, repair or maintain the service line or any of the line owned by or under the control of the plaintiff. As applied to the facts in this case, we are of the opinion that this instruction should have been given and that it was error to decline to give it. Other instructions make it clear that the jury could find for the plaintiff on the theory of negligence by the defendant in installing the service line. If the failure of the plaintiff to inspect the service line had been brought in question on the theory of contributory negligence, the known serviceable life of that line would undoubtedly bear upon the matter as tending to show what could reasonably be expected in that regard.

We do not think it necessary to discuss the remaining instructions on behalf of the defendant, which were refused, other than to say that we are of the opinion that the defendant was entitled to have the jury instructed that, if they believed from the evidence that the gas which caused the explosion escaped from leaks in pipe upon the premises of the plaintiff, for the care and maintenance of which the plaintiff was responsible, the verdict should have been for the defendant. The general instructions that the court gave to the jury on the abstract question that before they could find for the plaintiff, they must believe from the evidence that the negligence of the defendant was the sole and proximate cause of the damage, we do not believe are sufficient to cover this question.

For the foregoing reasons, the judgments of the Circuit Court and of the Common Pleas Court of Kanawha County are reversed, the verdict of the jury set aside and

the case remanded for further proceedings in accord with this opinion.

*Reversed and remanded.*