NELLIE REDMAN, *Administratrix, Etc.*

*v.*

COMMUNITY HOTEL CORPORATION, *Etc., et al.*

(No. 10521)

*and*

NELLIE REDMAN, *Administratrix, Etc.*

*v.*

STANDARD ENGINEERING COMPANY, *Etc., et al.*

(No. 10522)

Submitted April 29, 1953.  Decided June 16, 1953.

LOVINS, JUDGE, dissenting.

*Jackson, Kelly, Morrison* and *Moxley, W. T. O'Farrell*, for plaintiff in error.

*J. Campbell Palmer, III* for plaintiff in error.

*Samuel D. Lopinsky* and *Jackson D. Altizer*, for defendant in error.

GIVEN, JUDGE:

Defendants, Community Hotel Corporation and Standard Engineering Company, referred to in this opinion as Community and Standard, respectively, were proceeded against in the Court of Common Pleas of Kanawha County by Nellie Redman, administratrix of the estate of Clyde Redman, deceased. The action was for recovery of damages for wrongful death resulting from an explosion. Community demurred to the evidence of plaintiff. The trial court overruled the demurrer and, after the jury had returned a conditional verdict in the amount of ten thousand dollars, in a manner agreed upon by counsel, entered judgment against Community in that amount. Standard offered evidence in defense. After considering all the evidence, the jury returned a verdict against Standard in the amount of ten thousand dollars. The trial court set aside the verdict as to Standard and granted it a new trial. Writs of error were granted Community and the plaintiff by the Circuit Court of Kanawha County. That court reversed the judgment of the Court of Common Pleas as it related to Standard, affirmed the judgment as it related to Community, and entered a joint judgment against Community and Standard in the amount of ten thousand dollars. This Court granted separate writs of error to Community and Standard.

The injury which caused the death of plaintiff's decedent resulted from an explosion in the operation of a steam boiler, fired by natural gas, then being operated in a new addition to the Daniel Boone Hotel, owned and operated by Community. The addition was not completed

at the time of the explosion. Standard was under written contract with Community to do the plumbing, which included the installation of the boiler and the burner hereinafter described. The boiler and the burner were, however, purchased by Community and were delivered to Standard completely finished and ready for installation. A dispute exists between Community and Standard as to which was actually operating the boiler at the time of the explosion. The boiler had not been accepted by Community from Standard under the contract and Standard had not been paid for its installation. Standard contends, however, that Community had taken charge of the boiler and was operating it at the time of the explosion, and had operated it for approximately two months prior thereto, under a provision of the contract which reads: "The Owners shall have the right to take possession of or use any completed or partially completed part of the work." Plaintiff contends that Community was operating the boiler with the consent, under the direction, and with the help and advice of Standard, and that therefore Community and Standard were jointly operating the boiler and had joint control thereof at the time of the explosion.

As before noted, the boiler was delivered to Standard as a complete integral unit, ready for installation. To install the boiler, a very large one, it was necessary to construct what is usually referred to in the evidence as a fire box. The plans and specifications of the architect employed by and responsible to Community, relating to the fire box, were very minute in detail. Standard employed G. W. Higginbotham Company, a partnership, to construct the fire box. Higginbotham Company was the contractor which constructed the addition to the hotel, other than the part thereof being done by Standard, and was originally a defendant in the action, along with Community and Standard, but, on motion of plaintiff, was dismissed prior to the taking of any evidence. The fire box was of masonry construction. It was of rectangular shape, "36 inches high from the boiler room

floor to the boiler water leg." The walls were 26 inches thick, 12 inches of "load-bearing" brick, 5 inches of insulation and 9 inches of fire brick. Over top of the masonry was placed a one half inch thick "steel bearing plate to distribute the weight of the boiler." Leading from the rear of the fire box to the "stack", or chimney, was the metal breeching. The breeching of two boilers supplying steam for the older part of the hotel was connected to the same stack by separate breeching. In front of the fire box was a one half inch thick steel plate, provided with proper openings, for the gas burner. The fire box served a dual purpose. It supported the weight of the boiler and afforded a complete combustion chamber.

The burner was purchased by Standard, but Community designated and required the purchase of the particular type and make of burner, a "Fan Air burner as manufactured by the Mettler Company of Los Angeles." It was delivered to Standard as a complete integral unit ready for installation in the fire box. It was "an automatic gas burner consisting of multiple gas jets firing in a horizontal position and equipped with an integral blower to provide the air combustion." The burner was also provided with a pilot light fixture, to which was connected, by a quartz tube, a photo-electric tube. The photo-electric tube or cell is sensitive to a very small portion of the available light spectrum. There exists in the evidence a sharp conflict whether the photo-electric cell is sensitive to red rays, such as emanate from very hot brick. A representative of the manufacturer of the burner testified that it was sensitive only "to the white light or the bluish-white light which is relative to the ultraviolet end of the visible spectrum." The purpose of this assembly, often referred to as an "electric eye", is to control the intake of gas into the combustion chamber. With the pilot light not burning, the photo-electric cell is supposed to no longer generate "a current and this relay in this housing here falls out killing the electric circuit to this diaphragm valve and the valve closes and

the burner goes off." In other words, when the pilot light goes out, the burner automatically shuts off the entire gas supply, except that which passes to the pilot light fixture.

The explosion occurred in December, 1949, about 11:45 A. M. It seems not to be disputed that the explosion actually occurred in the breeching near the rear of the burner installed by Standard. Part of one wall supporting the boiler was blown down, permitting the boiler to tilt, breaking a large steam pipe. Plaintiff's decedent was severely burned, by escaping steam from the broken pipe, from which burns he died a few days later. Part of the work to be performed by Standard, under its contract with Community, was the insulation of all steam pipes installed by it. This work had been subcontracted by Standard to Asbestos Service Company. Plaintiff's decedent was an employee of the subcontractor, and was engaged in that work, at the time of the explosion, about fifteen feet distant from the boiler under which the explosion took place.

A view of the premises was had by the jury. The jury was permitted to view and examine the boiler, burner and fire box. At the view, it was pointed out to the jury, and later shown by the testimony of Griffis, an employee of Community and a witness for plaintiff, that steel supports were affixed to the boiler subsequent to the time of the explosion, but before the repairing of the fire box walls. No objection was made to the pointing out of such facts at the view, or to Griffis' testimony to that effect while at the view, but each defendant duly objected to that part of the testimony of Griffis when given in the court room, after the view.

Plaintiff's Instruction No. 1, given to the jury, is in the following language: "The Court instructs the jury that if you believe from a preponderance of the evidence that the defendant, Standard Engineering Company, before and at the time of the explosion had exclusive control of the furnace mentioned and described in the evi-

dence, and that plaintiff's decedent, Clyde Redman, was injured and burned as a direct result of the explosion of the furnace, from which injuries and burns, if any, he died; and if you further believe Clyde Redman was without fault, and the explosion was such that in the ordinary course of events does not occur, if the person who has the exclusive control uses reasonable care, then you may infer that the defendant, Standard Engineering Company, was guilty of negligence." The only objection made to the giving of the instruction was "I don't believe the furnace exploded. The thing that exploded was natural gas, if anything." We think that objection without merit. The jury could not have been misled by the language, "the explosion of the furnace". We do not, of course, consider other assignments of error relating to the instruction. See Rule VI, Rules of Practice for Trial Courts; *Slater* v. *United Fuel Gas Co.,* 126 W. Va. 127, 27 S. E. 2d 436.

Questions involved are included in the following propositions: (1) Does the proof establish whether Community or Standard, or both, were in control of the operation of the boiler at the time of the explosion? (2) does the doctrine of *res ipsa loquitur* apply as to either Community or Standard, or as to both? (3) if the doctrine of *res ipsa loquitur* applies, in any event, has the inference of negligence thereby created been conclusively, or by a clear preponderance of the evidence, rebutted? (4) did the admission of the answer of Raper, hereinafter quoted, constitute prejudicial error? (5) was admission of evidence relating to the affixing of metal supports to the boiler, subsequent to the injury, prejudicial error?

While the members of the Court are not in accord as to what the evidence establishes, with reference to control of the operation of the boiler at the time of the explosion, we may assume, for the purpose of this opinion, that Community and Standard exercised joint control. That apparently would be in accord with the jury

finding. Assuming such control, however, does not determine whether the *res ipsa loquitur* doctrine may be applied. Facts which justify the application of that doctrine must be apparent in the evidence. The inference of negligence arising therefrom does not come into existence merely on proof of control, and of an injury, unless the injury is such as does not result in the ordinary course of events if the person having control uses proper care. *Wright* v. *Valan,* 130 W. Va. 466, 43 S. E. 2d 364.

As before noticed, the boiler was purchased as a complete integral unit assembled ready for installation. The explosion did not occur within the boiler, but in the fire box under the boiler or in the breeching in the rear thereof. The boiler was not damaged by the explosion. No proof was offered to the effect that the boiler was in any way defective or that the manner in which it was installed had anything to do with the explosion. Neither is there any contention that the fire box or combustion chamber was in any way defective, or that the construction thereof was not in accord with the plans and specifications therefor, and as required by standard and acceptable practices. A number of witnesses familiar with the type of fire box constructed testified to the fact that it was properly constructed. No witness testified to the contrary. Also, a number of witnesses testified to the effect that the Mettler burner was properly installed by Standard. None testified to the contrary. After the explosion, the burner was dismantled by an experienced engineer familiar with that type of burner, each part thereof carefully examined and tested, and found to be in perfect working condition. It functioned perfectly after being reinstalled in the fire box. The successful operation of the boiler, in connection with the fire box and burner, for approximately two months prior to the time of the explosion, as well as after being reinstalled, strongly indicates that all installations were proper. There is nothing in the record to indicate otherwise, unless the explosion itself does so. The entire installations were inspected by an experienced engineer, employed

by the State, through the Fire Marshal's office, and a state license for the operation of the boiler was issued, based upon the report of that inspection.

Several theories were advanced as possible causes of the explosion. These theories may be of help in illustrating the nature of a large part of the evidence offered to the jury, but amount to no more than mere speculation or conjecture. See *Burk* v. *Huntington Development & Gas Company*, 133 W. Va. 817, 58 S. E. 2d 574. One theory was that from some cause, possibly a break in the main gas line, a pocket of air came through the main gas line, extinguishing the fire in the combustion chamber, and the pilot light as well, and that an accumulation of gas in the chamber exploded, by means of the heat retained in the chamber walls. Another theory was that an excess pressure in the gas line prevented the burner from properly operating in closing the intake valve, and that an excess amount of gas in the chamber exploded from the heat of the chamber walls. One witness, who had special knowledge of the functions of the burner and of the causes of gas explosions, testified: " * * * This explosion, as I see it, was caused by air in this line that come through there which did not have sufficient quantity of air to kill the pilot light, and this air in going through, after it left where the pilot light comes off there is a blower attached to the burner which adds additional air which made the gas mixture so lean that the main burner would not ignite but the pilot light would continue to burn and continued to operate the diaphragm valve which let this other mixture free to go on through. This mixture accumulates in the fire box and then after the air is all exhausted a slug of raw gas strikes and ignites, which ignites the whole business." Another witness, qualified as an expert in such matters, stated: "Well, as an opinion I would say that the main burner had lost ignition or had lost stable combustion; that there was excess of gas to the air, the gas was not being all consumed; that there was generation of carbon monoxide in the furnace which was ignited by the hot gases from the

adjacent boiler." Still another expert testified: "For some reason that we were unable to determine the pilot light was out and allowed a concentration or accumulation of gas in the furnace, and the boiler had very shortly prior to that time closed down because it had reached—in other words, the main gas valve was off when the boiler reached a certain pressure, and apparently when the pressure dropped the gas came back on. At that time the pilot light was definitely out and it allowed a concentration or accumulation of gas which was ignited there by the intense heat of the furnace walls."

In the very recent case of *Pope* v. *Edward M. Rude Carrier Corporation,* 138 W. Va. 218, 75 S. E. 2d 584, this Court carefully reviewed its holdings, as well as holdings in other states, with reference to the application of the *res ipsa loquitur* doctrine. We need not attempt to do so here, but will attempt to indicate by what reasoning we reach the conclusion that the doctrine can not be applied to the facts in the instant case. In 22 Am. Jur., Explosions and Explosives, Section 98, it is stated: "There is a marked conflict of authority as to the application of the doctrine of res ipsa loquitur to the explosion of boilers. It is the prevailing rule that there is no presumption of negligence to be deduced from the explosion of a boiler, and that in order for the plaintiff to sustain a recovery because of an injury occasioned by an explosion, he must show some specific act of negligence to which such explosion can be attributed * * *."

In *Veith* v. *Salt Co.,* 51 W. Va. 96, 41 S. E. 187, 57 L. R. A. 410, this Court followed the majority rule, holding:

"1. Where one places a steam boiler upon his premises and operates the same in lawful business with care and skill, so that it is no nuisance, in the absence of proof of fault or negligence in him, he is not liable for damages to his neighbor occasioned by the explosion of the boiler.

"2. A presumption of negligence does not arise from the mere fact of the explosion of a steam boiler used by

one engaged in lawful business. Negligence on his part must be shown." To the same effect are *Findley* v. *Railway Co.*, 72 W. Va. 268, 78 S. E. 396, and *Hanley* v. *Railway Co.*, 59 W. Va. 419, 53 S. E. 265. See *Saena* v. *Zenith Optical Co.*, 135 W. Va. 795, 65 S. E. 2d 205; *Wright* v. *Valan*, 130 W. Va. 466, 43 S. E. 2d 364; *Bell* v. *Gas Co.*, 106 W. Va. 155, 145 S. E. 165; *Dickinson* v. *Stuart Colliery Co.*, 71 W. Va. 325, 76 S. E. 654, 43 L. R. A., N. S., 335; *Window Glass Co.* v. *Oil & Gas Co.*, 63 W. Va. 202, 59 S. E. 959.

In the *Veith* case the Court said: " * * * It is contended for her [plaintiff] that the mere explosion of the boiler alone and *per se* creates, at least *prima facie*, a presumption of negligence, calling upon the defendant to repel such presumption under the doctrine known in law as *res ipsa loquitur*—the thing itself speaks * * *. But does this case fall under that doctrine? Is it possible that every operator of the millions using boilers is thus a guarantor of them against all latent defects? There is a division of authority here it is true; but the reason and the preponderance of authority are against the doctrine that the mere explosion of a boiler, without proof of some negligence, imposes upon its owner liability." We think the conclusion a correct one, and that this Court is bound by the decision in that case.

We are not unmindful that the explosion in the instant case occurred in the combustion chamber under the boiler, instead of within the boiler proper. We think, however, that is immaterial, in the circumstances of this case, in so far as the application of the *res ipsa loquitur* doctrine is concerned. The boiler, fire box, combustion chamber and burner, as assembled, were each a part of the single unit necessary for the operation which would produce steam, and should be so considered in determining the application of the doctrine. It is not contended, and no proof tends to establish, that any defect, patent or latent, existed in either, or that defendants could have discovered any defect by the use of due care. Certainly we

can not say that the fire box or the combustion chamber was inherently a dangerous instrumentality. For the purpose of considering the next question, however, we may assume that the doctrine of *res ipsa loquitur* applies in the circumstances of this case.

In this State, the effect of the application of the doctrine of *res ipsa loquitur*, a mere rule of evidence, does nothing more than to permit a jury to infer, from the facts bringing the doctrine into play, that the defendant was, or was not, negligent. *Holley* v. *Purity Baking Co.*, 128 W. Va. 531, 37 S. E. 2d 729, 167 A. L. R. 648. This being true, it necessarily follows that where the evidence produced on the trial clearly establishes defendant was in no manner negligent in respect to the facts which gave rise to the inference, there remains no question for jury determination. In other words, the inference created by the rule is entirely overcome, and the question becomes one of law for the court. In such circumstances, it then becomes the duty of the court, upon proper motion, to instruct the jury, as in like cases where proof, definitely or by a clear preponderance, establishes a fact in issue; for example, where contributory negligence has been so established. In *Owen* v. *Power Co.*, 78 W. Va. 596, 89 S. E. 262, this Court held: "7. The unexplained breaking of an insulator which causes a highly charged electric wire to sag from the arm of the pole supporting it to a distance of six or seven feet from the ground, at a place remote from any public highway, and its remaining in that condition for a period of twenty-four hours, do not prove negligence, in the face of direct, positive and undisputed testimony that reasonable care was observed in the construction, maintenance and operation of the line. *In such case, the presumption of negligence arising from the mere falling of the wire is overcome by direct proof of diligence.*" Emphasis supplied. In the opinion, page 604, the Court stated: " * * * In support of their contention they invoke the rule of *res ipsa loquitur*. But that is only a rule of evidence resting on a presumption which may be rebutted by positive proof

denying it * * *." *Snyder* v. *Wheeling Electrical Company,* 43 W. Va. 661, 28 S. E. 733, 39 L. R. A. 499, 64 Am. St. Rep. 922; *Bice* v. *Wheeling Electrical Company,* 62 W. Va. 685, 59 S. E. 626; 65 C. J. S., Negligence, Section 220(9).

The evidence clearly shows, and is in no way contradicted, that the boiler and burner were delivered as complete integral units, ready to be installed; that neither was found to contain any defect, patent or latent, known or unknown to Standard before or after the explosion; that the fire box and combustion chamber were constructed in accordance with plans and specifications of an experienced architect, and in accordance with acceptable standards and practices; that the installations were each made in proper manner, according to plans and specifications, and in accordance with recommendations and advice of the respective manufacturers; that each unit, and all installations, were in operation for approximately two months before the explosion, and that no incident of failure, because of any defect, occurred during that time or during the time of the operation of the boiler subsequent to the time of the repair of the damages resulting to the fire box, and that the operation of the boiler, at the time of the explosion, was by experienced employees, whether such operation be considered as having been by Community or Standard, or both. In these circumstances, it seems clear, we think, that any inference of negligence arising from the application of the doctrine of *res ipsa loquitur,* assuming that doctrine applicable, has been conclusively rebutted.

C. A. Raper, State Fire Marshal, testifying for plaintiff, testified to the effect that he had made a very large number of investigations for the purpose of determining the cause of explosions, "In connection with gas furnaces mechanically and electrically operated"; and that he made an investigation as to the cause of the explosion in the instant case. He was asked this question: "Now, in the ordinary course of events, had the boiler, that is,

the furnace been reasonably maintained and properly operated, would this explosion have occurred?" And, over a general objection of defendants, made this answer: "In my opinion the explosion could not have occurred." This Court is of the opinion that the admission of this evidence constituted prejudicial error. The question called for an opinion as to the very fact upon which the jury was to decide liability of defendants. Answer thereto could only mean that such an explosion, in the opinion of the witness, could not possibly have occurred without negligence. Yet in this very case the cause of the explosion is not known, and any theory as to such cause is highly speculative. It can not be denied that explosions do occur without negligence. Unavoidable explosions do occur. In such circumstances, where the *res ipsa loquitur* doctrine does not apply, as well as where proof of any negligence can not be found or produced, no liability can be imposed as to any defendant. In *Bowen* v. *Huntington,* 35 W. Va. 682, 14 S. E. 217, the Court, at page 688, quoted with approval the following statement from Wharton & Stille's Medical Jurisprudence, stating: " * * * we find it said that 'experts may be asked their opinion as to the scientific bearing of a particular fact and as to an hypothetical case, but not as to inferences to be drawn from the whole trial, for this would be to invade the province of the jury; nor as to conclusions of law, for this would be to invade the province of the court.' " In *State* v. *Musgrave,* 43 W. Va. 672, 28 S. E. 813, this Court held: "5. The object of all questions to experts should be to obtain their opinion as to matters of skill or science which are in controversy, and at the same time to exclude their opinions as to the effect of the evidence in establishing controverted facts." See *State* v. *Evans,* 136 W. Va. 1, 66 S. E. 2d 545; *Colebank* v. *Standard Garage Co.,* 75 W. Va. 389, 84 S. E. 1051; *Purkey* v. *Coal Co.,* 57 W. Va. 595, 50 S. E. 755; *State* v. *Hull,* 45 W. Va. 767, 32 S. E. 240; *McMechen* v. *McMechen,* 17 W. Va. 683, 41 Am. Rep. 682.

The last point of error necessary to be considered re-

lates to evidence of the attachment of steel supports to the boiler subsequent to the time of the explosion. Defendants rely upon holdings like those of *Jankey* v. *Hope Natural Gas Co.*, 91 W. Va. 308, 112 S. E. 642; *Lay* v. *Elk Ridge Coal & Coke Co.*, 64 W. Va. 288, 61 S. E. 156. As a general rule, such evidence is not admissible, in the trial of an action based on negligence, but there are exceptions to its admission. We think the facts in the instant case bring it within the exception to the general rule indicated in the cases just cited. Here the jury viewed the premises and, necessarily, saw the steel supports attached to the boiler. They had been informed that the break in the steam pipe resulted from the tilting of the boiler, which they could have believed would have been impossible had the supports been attached at the time of the explosion. They were, therefore, entitled to be told the truth as to the time of the attachment of the supports. Probably an instruction given by the court, limiting the effect of the evidence, would have been proper, had a motion to do so been made by either of defendants.

From the conclusions reached, it necessarily follows that the judgments of the Circuit Court, and of the Court of Common Pleas, of Kanawha County, be reversed; that the verdicts of the jury be set aside; that the cases be remanded to the Court of Common Pleas; that the defendant, Standard Engineering Company, be granted a new trial; and that the demurrer of the defendant, Community Hotel Corporation, to the evidence of plaintiff, be sustained.

> *Reversed; verdict set aside; new trial awarded.*

LOVINS, JUDGE, dissenting:

I respectfully dissent from some of the conclusions set forth in the Court's opinion in the instant case. The application of the doctrine of *res ipsa loquitur* is denied

upon the authority of *Veith* v. *Salt Co.*, 51 W. Va. 96, 41 S. E. 187, and other cases cited.

I think the explosion in the instant case, as indicated in the Court's opinion, was a natural gas explosion, rather than an explosion of a steam boiler. True, the explosion took place in the "breeching" of a steam boiler, but it is clear, at least to me, that the natural gas which should have been ignited by the automatic burner, moved to that part of the boiler, and was, by some means or other, exploded. I would characterize the cause of decedent's death as an explosion of a heating agency, rather than the explosion of steam in a boiler.

Bearing that distinction in mind, I think that the following rule should be applied: "The rule in West Virginia is that the mere occurrence of a gas explosion does not give rise to the doctrine of *res ipsa loquitur*. The doctrine may be applied if the cause of the explosion is traced to an instrumentality controlled exclusively by the defendant". *Agsten* v. *United Fuel Gas Co.*, 117 W. Va. 515, 522, 186 S. E. 126. The rule so stated in the *Agsten* case is supported by the cases therein cited. *Groff* v. *Gas Co.*, 110 W. Va. 54, 59, 156 S. E. 881; *Bell* v. *Develop. & Gas Co.*, 106 W. Va. 155, 163, 145 S. E. 165; *Laurent* v. *Gas Co.*, 101 W. Va. 499, 133 S. E. 116; *Window Glass Co.* v. *Oil and Gas Co.*, 63 W. Va. 202, 59 S. E. 959. In the *Laurent* case, this Court pointed to the fact that in order to apply the rule of *res ipsa loquitur*, the premises where the explosion occurs must be in the sole control of the gas company transmitting gas to such premises.

No such question here arises in this case. The gas company furnishing the gas is not charged with the death of the plaintiff decedent. The gist of plaintiff's action is that the defective construction or operation of an automatic burner under the joint control of defendants herein, caused the accident.

I think that negligence on the part of defendants could be inferred from the proof of facts shown in the record,

and the rule of *res ipsa loquitur* in that situation applies. See *Jankey* v. *Gas Co.*, 98 W. Va. 412, 127 S. E. 199. "Negligence is never presumed. It must be proved. The plaintiffs, however, in this case claim the benefit of the doctrine of *'res ipsa loquitur'*; that is, that the accident itself, with all its surroundings, speaks in such way and is of such a character as to show negligence on the part of the defendant company. And that imposes upon it the burden of rebutting such negligence by proof. This may be one mode of showing that there is proof of negligence, and, if negligence is shown, then that negligence must be met, or the plaintiffs are entitled to recover." *Wood et al.* v. *Wilmington City Ry. Co.*, (Del.) 64 Atl. 246, 247. See *Jones* v. *Bridge Co.*, 70 W. Va. 374, 376, 73 S. E. 942 *et. seq.*, where the principle authorizing the application of *res ipsa loquitur* is elaborated at some length and numerous cases are cited in support thereof. In *Snyder* v. *Wheeling Electrical Co.*, 43 W. Va. 661, 667, 28 S. E. 733, the following is quoted from *Scott* v. *Dock Co.*, 3 Hurl. & C. 596: " 'There must be reasonable evidence of negligence. But where the thing is shown to be under the management of defendant or his servants, and the accident is such as, in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care.' " See Annotation 138 A.L.R. page 909.

Appraising the facts shown here, I think that the rule of *res ipsa loquitur* applies to this case. The defendants evidently had joint control of the automatic burner in the fire box. I regard the failure of the automatic burner or its improper operation, as the real cause of the explosion. The explosion dislocated the boiler, which in turn caused a pipe leading from it to break its connection, and the decedent was burned to death by escaping steam. Such accidents do not occur in the ordinary course of operation. The decedent at the time of his fatal injury was on the premises, engaged in lawful activities, being a workman employed by a sub-contractor. He had a right

to expect proper, sufficient and efficient care in the operation of the automatic burner. It is not a defense to say that the burner was an integral unit ready for installation in the fire box of the boiler. The description of the burner in the Court's opinion clearly discloses that it was a complicated piece of machinery which failed to operate properly and caused the explosion. This, to me, is sufficient to indicate that the inference of negligence is not met either by conclusive evidence or a clear preponderance of proof.

I do not argue against the rule that the explosion of steam confined in a steam boiler calls for application of the principle *res ipsa loquitur*, but I do think that the failure of a complicated mechanism causing an explosion of natural gas used as a heating agency, is such as to call for the application of the rule *res ipsa loquitur*, and that the presumption of negligence so arising has not been rebutted in this case. The combination of the burner using natural gas, automatically igniting and shutting off the gas was a dangerous instrumentality.

The admission of testimony of the expert witness, Raper, constituted reversible error, and for that reason alone, I would reverse the judgment of the Circuit Court of Kanawha County, but not on any other ground.